L. L. LINDSEY v. JAMES HEATON.

[FILED OCTOBER 23, 1889.]

1. **Contract:** ORIGINAL UNDERTAKING. The evidence examined, and *held*, to sustain the finding of the trial jury that a direct and unconditional promise had been made by plaintiff in error to pay for certain goods, furnished a third party prior to their delivery, and upon the faith of which the property was delivered to the purchaser.

2. ———: STATUTE OF FRAUDS. In such case the promise was not a conditional one to answer for the debt of another, but an original undertaking, which was not within the statute of frauds.

3. ———: CONSIDERATION. The promise, having been made prior to the delivery of any of the property sold, and such sale and delivery having been made upon the faith of the agreement of the promisor, it was sustained by sufficient consideration and the promisor was liable thereon.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Billingsley & Woodward,* for plaintiff in error:

Even had there been a promise to pay there was no consideration. (*Nelson v. Boynton,* 3 Metc. [Mass.], 396; *Morrissey v. Kinsey,* 16 Neb., 17; *Langdon v. Richardson,* 58 Ia., 610; *Easter v. White,* 12 O. S., 219; *Rose v. O'Linn,* 10 Neb., 364.) As to the doctrine of original and collateral promises: *Clopper v. Poland,* 12 Neb., 70; *Fitzgerald v. Morrissey,* 14 Id., 201; *Crawford v. Edison,* 45 O. S., 239; *Birchell v. Neaster,* 36 Id., 331. There is no privity of contract between the parties, as the evidence shows that the account was charged to Clark. (Browne, Statute of Frauds, secs. 173–4.) The case falls clearly within the statute of frauds.

*H. J. Whitmore,* for defendant in error:

The statute of frauds has no application to the facts of this case, and even if it had, the payment of $20 would be considered as part performance. The case is similar to *Waters v. Shafer,* 25 Neb., 225, which is one of the latest utterances of this court on the statute of frauds.

REESE, CH. J.

This is a proceeding in error to the district court of Lancaster county. It was alleged in the petition in that court that on the 13th day of May, 1887, defendant in error sold and delivered to plaintiff in error one burial case, robe, and box, and furnished certain livery and per-

formed certain labor under an oral contract between plaintiff and defendant for which plaintiff in error agreed to pay to defendant in error the sum of $100, and upon which plaintiff in error had paid the sum of $20 and no more, leaving due and unpaid the sum of $80, for which, with interest, judgment was demanded.

The answer consisted, first, of a general denial of all the allegations of the petition, except as to the payment of the $20. For a second defense it was alleged "That one John Clark purchased the property described in plaintiff's petition from the plaintiff and not this defendant; that at the time said purchase was made as aforesaid the said Clark was in the employ of defendant, and that defendant, without any consideration whatever, agreed with plaintiff that he, defendant, would pay him, plaintiff, out of said Clark's wages the sum of $30 per month, and no more, during the time that said Clark remained in defendant's employ, until said $100 was duly paid to plaintiff; that immediately thereafter the said Clark left the employ of defendant and has not returned to the same; that at the time Clark left the employ of defendant as aforesaid defendant was indebted to him, the said Clark, in the sum of $20, which sum was duly paid to plaintiff by this defendant in good faith, in furtherance of said arrangement with plaintiff as aforesaid and not on any contract between plaintiff and defendant as alleged in plaintiff's petition. Defendant is ready and willing, and has at all times been ready and willing, to do and perform each and every undertaking made with plaintiff as aforesaid." For a third defense it was alleged that the goods described in plaintiff's petition were purchased "by one John Clark, and not this defendant; and that if defendant made any contract to pay for the same, it was a promise to pay the debt of the said John Clark and not defendant's debt, and therefore the enforcement of payment of the same is avoided by the statute of frauds and perjuries."

A jury trial was had which resulted in a verdict in favor of defendant in error for the sum of $90, and upon which judgment was duly rendered.

It appears from the evidence that defendant in error was engaged in the undertaking business in the city of Lincoln, and that one Henrietta Ricks, who was a friend or acquaintance of the said John Clark, died in the city prior to the making of the contract and that Clark applied to defendant in error for a suitable burial case in which she might be transported to Louisville, Kentucky, for interment; that defendant in error refused to furnish the burial case and other property required upon the credit of Clark alone; and that the name of plaintiff in error was suggested as security for the payment of the purchase price in case the goods were furnished. As to the contract between plaintiff in error and defendant in error the evidence submitted to the jury was conflicting, and the only question presented upon this part of the case is whether or not the evidence offered on behalf of defendant in error was sufficient to sustain the verdict, the jury being the judges of the weight of the testimony of the various witnesses. Defendant in error testified in substance that he received a telephone message from Hyatt's barn to go to Lindsey's saloon; that he went and a man in the back part of the room came and told him that a young woman by the name of Henrietta Ricks had died down on O street; that he went to the house and put her on the board, and was informed that it was the purpose to take the remains to Louisville, Kentucky, for burial; that he remarked that in order to do so the body would have to be embalmed and they said that they would come to his place of business and see about it; that he then went back to his store, having been informed in the meantime that Clark was irresponsible. We quote the following from the testimony:

I did not do anything when I went down there but just put her on the board and went back to my place, and

John Clark and these two ladies came there. They selected a casket, I think $60 or $65, and a robe, all of the best ; I took Clark into the back room and asked him who was to pay for it; I said I wanted it secured before they went out of the house. He said Mr. " Bud " Lindsey was to pay for it; I might go and see " Bud." I went to the saloon, but he was not in there and I came out and met him ten or twelve feet from the door and told him that Clark had been with me and the woman and selected an outfit. He asked me how much it amounted to ; I said $100 it would be, the body being put in the box lined with zinc and delivered at the depot. He asked me the terms and I told him $50 cash and $50 in thirty days. He studied a minute and said if I would make it thirty, sixty and ninety days, equal payments—$33⅓—" I will pay it and charge it to him." That is what he told me. I then went to the bank and asked about him.

Q. What bank did you go to ?

A. I went to C. C. Boggs, cashier of the Lincoln National Bank.

Q. Then you furnished the goods ?

A. I did.

Q. One hundred dollars worth ?

A. Yes, sir.

Q. State whether or not you have received any portion of that.

A. I have. When the thirty days were out I took a bill to him for $33.30 or $33.35 ; I made it even money, I did not make it $33⅓; I think $33.30. When the sixty days were out I took a bill and he did not pay that; did not say why, but would not. When the ninety days were out, then I presented the bill for $100.

Q. Did he pay you at that time ?

A. No, sir. I kept after him then every time I saw him almost. He kept putting me off, saying he was awful hard up. I went once and told him I was going away

and if he could not get it next week. I asked him what he was going to do and he said he did not have the money to spare and he could not do it. But just 'before I went to Denver he promised to let me have part of it any way. The day before I went to Denver he let me have a check for $20.

The books of account of defendant in error which were introduced in evidence show that the charges were made to "John Clark and 'Bud' Lindsey." The witness also testified that at the time the goods were furnished, there was not and had not been anything said by plaintiff in error about the price being taken out of the wages of Clark, who was in the employ of plaintiff in error, if Clark continued to work there. The testimony of this witness was not changed in any material part by the cross-examination.

On the part of the defendant in error the deposition of Clark was taken and read in evidence, in which he testified substantially that the contract between defendant in error and plaintiff in error was that plaintiff in error would retain $20 per month out of his (Clark's) wages during the time that he should work for plaintiff in error, but that he had not worked for plaintiff in error since the goods were furnished. The testimony of plaintiff in error was to the same effect.

In support of the verdict of the jury it must be held that the testimony of defendant in error was sufficient to sustain it to the extent of the facts detailed in his evidence. The only question, therefore, remaining for decision is whether or not the promise of the plaintiff in error, if made as testified to by defendant in error, was within the statute of frauds.

In this examination two questions are presented which may be stated to be: First, was the alleged promise an undertaking to pay the debt of another ; and if so, Second, was it supported by a sufficient consideration?

It must be conceded that if the promise was made at the time and under the circumstances as testified to by defendant in error, it was not a promise to pay a debt then in existence and was therefore not a collateral, but an original undertaking. (1 Reed on Statute of Frauds, secs. 30 and 31.) The property had not been sold and was still in the storehouse of defendant in error. There was no debt against Clark. It may be also stated as fundamental that if the credit was given contemporaneously with or after, and upon the faith of, the promise of plaintiff in error to pay for the goods, the fact that the goods were delivered to or the benefit received by Clark would not bring the promise within the statute and it would be binding. (Id., sec. 87 *et seq.*) The question as to who was the party to whom the credit was given was for the jury. (Id., 89.) The property having been delivered upon the faith of the promise, would be a sufficient consideration to create the liability. No part of the property had been delivered to Clark, and if the testimony of defendant in error was true, of which the jury were the sole judges, such delivery would not have been made had it not been for the promise of plaintiff in error.

Assuming, as we must, that upon all these questions the jury found for defendant in error, the verdict was sustained by the evidence.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.