## JOHN JOSEPH ET AL. V. CHARLES M. SMITH.

### FILED FEBRUARY 7, 1894.   NO. 5373.

1. **Statute of Frauds.** A party who has cared for and fed certain stock for another, the bill therefor, or a part of it, being unpaid, the stock, with some other chattel property of his debtor, being in his possession under a verbal lien to secure the payment of the balance due on his account, such lien to be valid so long as such property shall remain in said creditor's possession, who is induced by the direct promise of a third party, such third party claiming a prior lien on the live stock so held, by reason of a chattel mortgage, that said third party will pay the account so due said first party if he will release from his possession such stock and chattels, to so release and surrender possession of the property, and this action is an advantage or benefit, or forwards the interests, of the party making such promise, can maintain an action against such promisor, the promise not being within the statute of frauds.

2. **The instructions** given by the court on its own motion, and instructions requested by defendant in error and given, and instructions requested by plaintiff in error and refused examined, and *held* no error in either the giving or refusing.

ERROR from the district court of Saunders county. Tried below before BATES, J.

*Simpson & Sornborger,* for plaintiff in error, cited: *State Bank of Nebraska v. Lowe,* 22 Neb., 68; *Mallory v. Gillett,* 21 N. Y., 412; *Duffy v. Wunsch,* 42 N. Y., 243; *Pfeiffer v. Adler,* 37 N. Y., 164; *Brown v. Weber,* 38 N. Y., 187; *Belknap v. Bender,* 75 N. Y., 446; *Ackley v. Parmenter,* 98 N. Y., 425; *Rintoul v. White,* 15 N. E. Rep. [N. Y.], 318; *Nelson v. Boynton,* 3 Met. [Mass.], 396; *Curtis v. Brown,* 5 Cush. [Mass.], 488; *Furbish v. Goodnow,* 98 Mass., 299; *Dows v. Sweet,* 120 Mass., 322; *Preston v. Young,* 46 Mich., 103; *Cross v. Richardson,* 30 Vt., 649; *Fullam v. Adams,* 37 Vt., 391; *Emerson v. Slater,* 22 How. [U. S.], 28; *Clapp v. Webb,* 9 N. W. Rep.

[Wis.], 798; *Stewart v. Jerome,* 38 N. W. Rep. [Mich.], 895; *Baer v. English,* 11 S. E. Rep. [Ga.], 453.

*J. R. Gilkeson* and *H. Gilkeson, contra.*

HARRISON, J.

The plaintiff in this action in the lower court (defendant in error here) filed a petition alleging the copartnership of the defendants, and further, that on or about the first day of May, 1887, and for some time prior thereto, this plaintiff was in possession of certain personal property, to-wit, about $750 or $850 worth of personal property, consisting of horses, mules, work harness, wagons, wheel scrapers, etc., said property being held by this plaintiff and in the possession of this plaintiff at the said time for the purpose of securing a claim of $196.30 this plaintiff had against one J. B. O'Connell for feed furnished said horses and mules, for money advanced to said O'Connell by this plaintiff, and for livery furnished said J. B. O'Connell by this plaintiff; that on or about the first day of May, 1887, while said plaintiff was in possession of said property, and while said plaintiff was retaining possession of said property to secure the payment of said $196.30 from said J. B. O'Connell, defendants John Joseph and William Grafe came to plaintiff and represented to plaintiff that these defendants had a claim of $500 against said J. B. O'Connell, and that it would be greatly to the advantage of said defendants if said plaintiff would release his lien on said property and turn the said property over to the said J. B. O'Connell; and said defendant, on condition that said plaintiff would release his lien on said property and turn said property over to said J. B. O'Connell, agreed to assume and pay said amount of $196.30 due and payable from said O'Connell to this plaintiff; that relying on the said agreement and undertaking of said defendants, this plaintiff released said lien on said property, and surrendered his pos-

session of said property, and turned said property over to said J. B. O'Connell, and assigned his claim of $196.30 to the said defendants, and turned the evidence of same over to the said defendants; that on or about January 1, 1891, defendants paid plaintiff $44.25; that there was still due plaintiff the sum of $191.65, and interest at seven per cent per annum from March 4, 1891, for which plaintiff prayed judgment.   Defendants Joseph and Grafe answered, admitting the existence of the partnership and denied each and every other allegation of the petition.   There was a trial to a jury and a verdict for plaintiff in the sum of $204.13.   Motion for a new trial was filed, submitted, and overruled, and judgment was entered on the verdict for plaintiff, and defendants Joseph and Grafe brought the case to this court on error.

The facts, as they appear from the evidence, are substantially as follows: During the fall, winter, and spring of 1886 and 1887, one John B. O'Connell, a railroad contractor, was working on sections of a railroad then being constructed in and through Saunders county, Nebraska, and while there, and so engaged, had bought supplies of Joseph & Grafe, who were running a general store in Wahoo, in said county, and became indebted to them in a considerable sum.   He also had dealings with the plaintiff Smith, then proprietor of a livery and feed stable, and became indebted, to the amount of the account in suit, for the care and feeding of some stock, horses, and mules, and for which plaintiff says O'Connell had given him a verbal lien on the stock and other property, wagons, and scrapers as security for the payment of the account.   He states that O'Connell told him he could hold the property until he was paid his bill. On the 15th of March, 1887, O'Connell executed a chattel mortgage to Joseph & Grafe in the sum of $500 on the horses of which Smith had possession at the time.   He alleges Joseph & Grafe made the promise to him to induce him to surrender the possession of the property.   Joseph & Grafe

had, it appears, loaned or advanced to O'Connell some
money, indorsed some of his paper, and furnished him sup-
plies, and by May, 1887, O'Connell owed Joseph & Grafe
about $800. At the time O'Connell completed his contract
on the road he moved all his stock and tools to Wahoo and
to the stable of Smith, where they were left and cared for.
About this time Smith and O'Connell examined their ac-
counts and determined upon the amount due Smith, and he
and Smith, according to the testimony on the part of Smith
by himself and witnesses, went to the store of Joseph &
Grafe and there, in a conversation between Joseph and
Smith, Joseph stated to Smith that if he would release or
surrender the "stock" or "stuff," they (Joseph & Grafe)
would pay his bill or account against O'Connell. This
conversation is disputed by Joseph, but it has been passed
upon by the jury, and it is not for us to disturb their find-
ing. There is no complaint on this point in the brief of
plaintiff, and we think, from an examination of the evidence,
that the weight of the evidence supports the conversation
as given in the testimony of the plaintiff. The testimony
discloses that at this time the firm of Joseph & Grafe had
the largest claim against O'Connell and were very anxious
that he should have possession of his stock, scrapers, etc.,
in order that he might get away, obtain work, and earn
money with which to liquidate his indebtedness to the firm ;
that Smith delivered his account against O'Connell to Joseph
& Grafe, and also some time checks which he then held,
and released the property or surrendered possession of it.
We find O'Connell very soon after with it in Saline county ;
and that after he moved the property to Saline county,
probably some time in June, 1887, he executed and deliv-
ered to Joseph & Grafe a mortgage in the sum of $700 on
the property surrendered by Smith. There was also evi-
dence showing that O'Connell had assigned and delivered
the final estimate for labor performed on the road under his
contract to Joseph & Grafe, the same, when received by

them, to be applied to payment of indebtedness of O'Connell to parties in Wahoo. Whether the claim of Smith was included, and one which was to be paid from this fund, is not very clear. It further appears that Joseph & Grafe received this money. There is some other evidence in the case, but we do not think it necessary that it be here quoted or referred to, as it can have no bearing upon the decision of the points raised. Joseph & Grafe have failed and refused to pay Smith, hence the suit.

The first contention in the case is that the promise of Joseph & Grafe to Smith was within the statute of frauds, therefore void. The case of *Rogers v. Empkie Hardware Co.*, 24 Neb., 653, cited in his brief by defendant in error, is, we think, in point. Parties in business at Wahoo turned property over to the Empkie Hardware Company, or its salesman, in payment of the debt due the company; and Rogers' attorney, being sent to collect a claim against the parties who had turned the goods over to the company, in a conversation with the company's salesman then in possession of the goods, was told by him that if he would not interfere with him in the possession of the goods he would pay the plaintiff's claim out of the first money received from the sale of the goods. This was accepted and acted upon, and afterwards the company sold the stock of goods and refused to pay Rogers' claim. It was argued that the promise was within the statute of frauds. The court held on this branch of the case as follows: "A direct promise of an agent of a wholesale mercantile establishment, who is in the possession of the goods of an insolvent firm in satisfaction of a debt of his principal, made to an attorney of another creditor of such insolvent firm, to pay a claim held by said attorney against said firm if he will not disturb him in the possession of the goods, is not a promise to answer for the debt of another, and need not be in writing;" and in the body of the opinion we find the following statement : "The first question presented is whether or not the contract was

a promise to pay the debt of another, and therefore necessary to be in writing. The promise is direct—that the salesman would pay the debt if not disturbed. He had at that time more goods in his hands than were necessary to pay the defendant's claim. His promise was not conditional, but absolute, and for a benefit to be received by the promisor or his principal. In such case, the promise need not be in writing." All the benefit received by the promisor in the above case was that he was not disturbed in his possession by the other party, of more goods than were necessary to pay his debt. In the case at bar Smith had possession, and of property other than that covered by the mortgage to Joseph & Grafe, and in order that O'Connell might have the property to enable him to earn sufficient money to pay the debt of Joseph & Grafe (certainly a benefit to the firm) they induced Smith to surrender such possession. To gain possession of the property held by Smith without the trouble and expense necessary to contest his possession, not only of the stock on which they claimed to hold a prior lien, but other articles to which they had no claim, and turn it over to O'Connell, that he might be able to go to work and earn money to be paid on their claim, they make a promise to Smith not to pay Smith's bill if O'Connell fails to pay it, but a direct and unequivocal promise and undertaking to pay his claim. Their principal aim in it was not so much to further O'Connell's interests but their own. If they could obtain possession of the stock and other articles for O'Connell, or have them surrendered to him, he could work and pay their bill, and if not, the possibility of their ever receiving it was very remote. To secure the possession and to induce Smith to give up the same without trouble and probably litigation and more or less expense, the promise was given. Under the rule established in our state, the consideration was sufficient and the promise was valid.

In *Fitzgerald v. Morrissey*, 14 Neb., 198, the following

rule was announced : " Where the leading object of a party promising to pay the debt of another is to promote his own interests, and not to become guarantor, and the promise is made on sufficient consideration, it will be valid, though not in writing. In such case the promisor assumes the payment of the debt." To the same effect are *Davis v. Patrick*, 12 Sup. Ct. Rep., 58 ; *Emerson v. Slater*, 22 How. [U. S.], 28, 43; *Mathews v. Seaver*, 34 Neb., 592 ; *Muller v. Riviere*, 46 Am. Rep., 291, 59 Tex., 640 ; *Leonard v. Vredenburgh*, 8 Johns. [N. Y.], 29 ; *Nelson v. Boynton*, 3 Met. [Mass.], 400; *Williams v. Leper*, 3 Burr. [Eng.], 1886; *Conradt v. Sullivan*, 15 Am. Rep., 261, 45 Ind., 180.

The plaintiff in error excepted to the giving of instruction No. 1, as requested by plaintiff in court below, and alleges it for error, and this is one of the errors insisted upon and argued in the brief for him in this court. This instruction is as follows:

"The jury are instructed that a verbal contract of the pledge of personal property to secure a debt, when the party to whom the pledge is given has possession of the property, is valid and legal and will be a lien upon the property so pledged so long as it remains in the possession of the party to whom the lien is given. And if, in this case, you find that the said J. B. O'Connell gave the plaintiff in this case a lien on the property described in the plaintiff's petition, and that the said defendants, while the said property was in the possession of the plaintiff, agreed with the plaintiff that they should pay the plaintiff's claim if he would surrender possession of the said property, and that in consideration of the said agreement of the said defendants, the plaintiff released the said property and surrendered possession thereof, this would be a valid consideration for the agreement of defendants to pay the said plaintiff, and the said agreement would be binding upon the defendants."

This instruction embodies the proposition that the case made in the evidence was not within the statute of frauds, and for this reason is claimed to be erroneous by attorneys for plaintiff in error; but as we have disposed of this question unfavorably or adversely to his contention, it disposes, therefore, of his objection to the above instruction; and we may further add that the court had instructed the jury as to the burden of proof in its instruction No. 3, in connection with which this must be read and construed.

The plaintiff in error offered an instruction numbered 4, which was as follows:

" You are instructed that before the plaintiff can recover in this case, he must show by a preponderance of the evidence not only that the defendant promised to pay the debt of O'Connell, but that, in addition to such promise to pay the same, the defendants obtained an advantage by reason of such promise, which they did not before have."

The court refused to give this instruction, which was excepted to by plaintiffs in error, and the refusal to give the instruction is assigned as error. The subject of this instruction was covered by No. 1, asked by defendant in error, and there was no error in such refusal. It has been frequently held by this court that where an instruction has been given on a point in controversy in a case, it is not error to refuse to give another instruction submitting the same in substance on the same point.

It is also urged that the court erred in giving instruction No. 2, requested by defendant in error, which reads as follows:

" The jury are instructed that if you find by the evidence that the defendant John Joseph was acting for the firm of Joseph & Grafe, then any contract made in reference to the payment of the plaintiff's claim, if you find any was made, would be binding upon said firm, and both of the defendants would be bound by said contract."

We have already disposed of the question, as to whether

or not the promise to pay Smith's bill was founded upon anything which was of benefit, or would forward the interests of Joseph & Grafe, in the affirmative; and the attorneys for the plaintiffs in error in their able brief, on page 9, say on this subject: "Had these acts of one member been such as to advantage the firm, to further its interests, * * * then the act of John Joseph would have been the act of the firm." This, we believe, is correct; and having, as before stated, found that such act benefited the firm, and that the evidence given warranted such a conclusion when construed with the other instructions, especially No. 1, asked by defendant in error and given, we think the instruction was correct.

The court below refused to give instruction No. 3, requested by plaintiffs in error, and this is complained of as error. The instruction was as follows:

"The jury are instructed that the mere delivery of an itemized statement of the account of the plaintiff against the man J. B. O'Connell to the defendants will not be in itself sufficient to prove an assignment from the plaintiff to defendant."

Whether the above is correct or not cannot, we think, affect the result of this case. The court below did not give any instructions in reference to the question of the assignment of the account as alleged in the petition and denied in the answer and the evidence introduced in regard to its delivery to the plaintiff in error. After careful consideration and much deliberation, we are unable to discern any tendency, in the refusal of the court to instruct the jury on this point, prejudicial to the rights of the plaintiffs in error. In order to arrive at the verdict returned by them, the jury, from the very nature and component parts of the case, were forced to conclude first that the conversation occurred and the promise was made to pay Smith's claim on surrender of the possession of the property. This was sufficient to sustain the verdict without any consideration of the as-

signment of the account as one element of the transaction. In other words, the question of the assignment was one of the subordinate or collateral elements of the proof, and amounted to nothing without the main elements, on which it depended or to which it was collateral, being first established. In other words, there must have been sufficient proved, and the jury must have been convinced of such facts that their verdict on such conclusion would be as it was, for plaintiff (defendant in error), before they reached the consideration of the question of assignment or no assignment in their deliberation, and hence if it was error to refuse the instruction, it was error without prejudice, and does not call for a reversal of the case.

The giving of instruction No. 6 by the court on its own motion is also alleged as error. The following is a copy of the instruction:

"If the jury find for plaintiff, you will find for him in the sum of $191.65, with seven per cent per annum from March 4, 1891."

We cannot discover wherein the plaintiffs in error are prejudiced in the giving of this instruction. To make it as favorable for the plaintiffs in error as possible, the defendant in error would be entitled to interest on the account from December 1, 1887, or six months after the date of the last item in the account. Taking the last item in the account to be June 1, 1887, which is probably a few days later than it should be fixed, the verdict is by a small sum in favor of the plaintiffs in error as to amount; and we conclude there was no error in the instruction of which they could complain.

This disposes of all the alleged errors argued in the briefs, and we conclude that the case was fairly submitted to the jury, and the verdict of the jury was right, and the judgment is

AFFIRMED.