UNION LOAN & SAVINGS ASSOCIATION, APPELLANT, V. WARNER D. JOHNSON ET AL., APPELLEES.

FILED FEBRUARY 6, 1929. No. 25900.

*Stewart & Stewart* and *A. A. Whitworth,* for appellant.

*Burkett, Wilson, Brown & Wilson, Lloyd E. Chapman* and *Harry E. Holeman, contra.*

Heard before ROSE, DEAN, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and PROUDFIT and REDICK, District Judges.

PROUDFIT, District Judge.

This is an action brought by the plaintiff, Union Loan & Savings Association, to foreclose four separate mortgages given to secure four separate loans made by plaintiff to defendant Warner D. Johnson. The defendant Swift Lumber & Fuel Company furnished lumber to Johnson for the construction of residences and other improvements on the mortgaged premises, for which mechanics' liens were filed for an unpaid balance alleged to be due it. This appeal involves only matters in controversy between the plaintiff and the defendant Swift Lumber & Fuel Company, hereinafter designated as defendant company.

The petition contains the usual allegations for the foreclosure of real estate mortgages, stating a separate cause of action on each of the four mortgages, and alleging that said mortgages were first liens on the property involved. The defendant company filed an answer and cross-petition. The allegations involved in this appeal state, in substance, that defendant company furnished the defendant Johnson material for the construction of residences and other im-

provements on the mortgaged premises in reliance upon an oral promise on the part of the plaintiff to advance money sufficient to pay for the lumber and material bill up to the amount of said loans. The cross-petition contains five separate causes of action based on claims for five separate mechanics' liens for material alleged to have been furnished by the defendant company to defendant Johnson for improvements on the lots covered by said mortgages. The prayer of each cause of action of the cross-petition is as follows: "Wherefore, this answering defendant asks an accounting and determination of the amount due it, and that said amount be declared a first, best, prior, and paramount lien upon said premises; that its mechanic's lien may be foreclosed and the property sold, and that the defendants, Warner D. Johnson and Hilga O. Johnson, and the plaintiff, Union Loan & Savings Association, may be adjudged to pay any deficiency remaining due and owing after the proceeds of said sale shall be applied to said indebtedness."

The trial court found that the defendant company was entitled to a first lien on the mortgaged premises by reason of an alleged oral promise made by plaintiff to defendant company to see defendant company's claim for material paid to the extent of money arranged to be loaned upon said mortgages by the plaintiff to the defendant Johnson. The court for the same reason rendered judgment in favor of the company against plaintiff for $293.55, the unpaid balance due from defendant Johnson for material furnished on lot 9, against which the company failed to sustain its claim to a mechanic's lien. Paragraphs 6 and 7 of the decree contain the findings of the court upon the issues between plaintiff and defendant company, and are as follows:

"6. That notwithstanding the said mortgages of the plaintiff were filed before the said mechanics' liens attached, and were prior in point of time to said mechanics' liens, said lumber and building materials represented by said liens were furnished by the defendant Swift Lumber & Fuel Company, upon the oral promise made by the plaintiff to it that plaintiff would see its claim for said materials paid to the

extent of the money arranged to be loaned upon said mortgages by the plaintiff and the defendant Johnson, and that, inasmuch as said lumber and building materials went to enhance the value of the real estate and to increase the security of plaintiff, such promise upon the part of plaintiff was not void or voidable within the statute of frauds.

"7. That inasmuch as the defendant Swift Lumber & Fuel Company furnished to the defendants Warner D. Johnson and Hilga O. Johnson for the erection and completion of the building on lot 9 a quantity of building materials, upon which there remains a balance due of $271.55, and inasmuch as said material was furnished under said agreement on the part of plaintiff to see it paid, the defendant Swift Lumber & Fuel Company, not being entitled to any lien by which said payment could be had, should have judgment against plaintiff in said sum with interest thereon at the rate of 7 per cent. from the 23d day of November, 1925, amounting in all to the sum of $293.55."

From this finding and judgment the plaintiff has prosecuted an appeal to this court, alleging, first, that the court erred in rendering a decree in favor of the defendant company whereby it was given a first lien on the real estate involved, other than lot 9, and in rendering a judgment against plaintiff in favor of defendant for $293.55; second, that the alleged oral promise upon which the decree in favor of defendant company was based, if made, was void under the statute of frauds; and, third, that the finding of the court that the alleged oral promise referred to in the sixth and seventh paragraphs of the decree, as made by plaintiff to defendant company, was not supported by the evidence and is contrary thereto.

There is but one question other than the sufficiency of the evidence raised in this appeal, and that is, was the alleged oral promise upon which the decree in favor of the defendant company was based, if made, void under the statute of frauds? If it was, then the decree of the trial court is erroneous; if the promise was not void under the statute, then the decree, if supported by the evidence, is not errone-

ous. For reasons which will hereafter appear, it will not be necessary to discuss the evidence in this case except as relating to the main question: Was said promise within the statute of frauds?

The promise upon which the defendant company relied to support its claim as set forth in the petition is that plaintiff on divers occasions "always assured this answering defendant that it, the plaintiff, would furnish the money and complete the loans as agreed to be made, to the end that the houses contemplated and planned in the course of construction by the defendants Johnson should be completed, and all to the end that this answering defendant would be paid for the lumber and building materials furnished by it, and plaintiff further agreed that it would keep check on the amount of lumber and materials furnished by this answering defendant, and would always see to it that from the money which plaintiff was loaning to said defendants Johnson this answering defendant would be paid."

To support this allegation Mr. S. S. Swift, president of the defendant company, testifies in reference to a conversation had with either the president or assistant treasurer of the plaintiff: "I explained that we expected to make Johnson a very low price on the assurance that he intended to build more than one house. I don't remember now the exact number he was going to build, but it was three or four or five anyway, anyway more than three, I would say; and I had made him a special price with the idea that he was going to use a lot of material, and I wanted to know that I was going to get my money for it. And it was on Mr. Bechter's or Mr. Miller's assurance that they would advance him the money and see that we got our money provided that we kept them advised as to what our bills were that I took this business." Mr. Bechter and Mr. Miller are officers of the plaintiff association. And on cross-examination Mr. Swift testifies: "Well, I stated to Mr. Miller that Mr. Johnson had told me that he was going to build several houses and that Mr. Miller, or rather the company, was going to loan $3,500 on each of those houses, and I wanted to know whether or

not that was true. And Mr. Miller said it was. And I said that we are inquiring about this because we wanted to know something about where our money was coming from, and either Mr. Miller or Mr. Bechter assured me that, if we kept them advised as to the amount Johnson owed us from time to time, they would see that he was not paid until he paid us."

At no place in the record does it appear from the testimony of parties in behalf of the defendant company that the promise was any more definite than as herein set forth, that is, that the plaintiff association would see that the defendant company was paid, and it furthermore appears that there was no note or memorandum in writing relating to said promise signed by the association or any one in its behalf, and the record also discloses that the making of this promise, as related by the witness, Mr. Swift, was pointedly denied by both Bechter and Miller. The record further discloses that no charge was made against the plaintiff association, and no money paid by it to the defendant company on the account of Johnson, but that all payments made by the association were made directly to Johnson and such payments as were received by defendant Swift company were made directly by Johnson to the company, and the material furnished was all charged to Johnson, so far as disclosed by the record.

This court has held: "In an action to recover for services rendered to a third person the general rule is that, if the person for whose benefit the promise was made is himself liable, the promise of the defendant, although made before the services were rendered, is collateral, and within the statute of frauds." *Swigart v. Gentert,* 63 Neb. 157.

The appellee attaches considerable importance to the fact that the alleged promise was made before the material was furnished, and therefore the statute of frauds has no application; but the doctrine as established by *Swigart v. Gentert, supra,* covers that phase of the case also, and holds clearly that the promise is within the statute of frauds if the party for whom the services were rendered is liable.

There is no doubt in this case but what the defendant Johnson was and is liable for the payment for the materials furnished in carrying out his building enterprise.

Appellee contends, and the trial court apparently had the theory that, inasmuch as the material furnished to defendant Johnson went to enhance the value of the property upon which plaintiff held mortgages, therefore the mortgages would be subordinate to the mechanics' liens. That, however, is not the law. In *Henry & Coatsworth Co. v. Halter*, 58 Neb. 685, the law is said to be: "The lien of an ordinary mortgage is not subordinate to mechanics' liens, merely because the money which it was given to secure was loaned for the purpose of improving the mortgaged premises, and under an express contract that it should be so used."

The evidence clearly discloses that the mortgages were on file before the material was furnished for building on these lots, except as to lot 9, and the building on that lot had been almost completed and paid for before the mortgage was filed, and the defendant company did not file a mechanic's lien against that lot until after the time elapsed for filing same, so that the mortgage as to that lot clearly had precedence over the mechanic's lien.

The appellee has cited a large number of authorities in his brief showing apparent exceptions to the application of the statute of frauds, but the cases cited are not parallel with the case at bar and deal with actions wherein there was a direct promise to pay on the part of the person to be charged, or there was a new and independent contract based upon a sufficient consideration to support the promise. And after a partial performance, such promise has been held to be good. In the instant case there is no direct promise to pay, either alleged or proved. Neither is there evidence of a new and independent contract between the plaintiff association and the defendant company. The plaintiff association and defendant Johnson were not engaged in a joint building enterprise, but the association was merely loaning money to Johnson, and Johnson was buying material from defendant company. The mortgages were regularly

executed, filed for record, and the defendant company, as well as the rest of the world, charged with notice of the existence of these mortgages. No lien having been filed in time against lot 9, and the material for the building on the other lots having been furnished after the recording of the mortgages, the lien of the mortgages is superior. *Creigh Sons & Co. v. Jones,* 103 Neb. 706.

A thorough examination of the evidence in this case is conclusive of the fact that the promise of the plaintiff was a collateral undertaking and within the statute of frauds, and the decree of the trial court in finding for the defendant company subordinating the lien of plaintiff's mortgages to the mechanics' liens of defendant company was erroneous, should be reversed and a decree foreclosing plaintiff's mortgages and giving same priority should be entered in accordance with the views herein expressed.

REVERSED AND REMANDED, WITH DIRECTIONS.

ON REARGUMENT.

Before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

REDICK, District Judge.

A hearing was had in this case at a prior term at which time Proudfit, District Judge, was sitting and participating, and to whom the case was referred to write the opinion for the court. The opinion was written and submitted to the court, but, upon consultation, there appearing to be some doubt as to the correct disposition of the case, a reargument was ordered and hearing had at which Judge Proudfit was not present, and upon consultation the case was referred to the writer to prepare the opinion of the court.

At the consultation upon the first opinion, the writer presented written objections to its acceptance, but, upon further consideration of the record, briefs and authorities cited, has concluded that the Proudfit opinion should be adopted.

Under the circumstances, it will not be necessary to make a complete statement of facts, for which reference is made

to the original opinion. The only question upon which a difference of opinion existed among the judges was whether or not the promise of appellant was original or collateral. The form of the promise was collateral "that plaintiff (appellant) would see its claim for said materials paid to the extent of the money arranged to be loaned." The testimony of Mr. Swift for the claimant on this point was: "It was on Mr. Bechter's or Mr. Miller's assurance that they would advance him (Johnson) the money and see that we got our money provided that we kept them advised as to what our bills were that I took this business." Also, "There were no other conversations that I remember of that directly bore on the fact that they were going to pay Johnson's account— or rather, see that he did pay his account—other than their actions. They went right along verifying them all the time when they were asking me about this."

A brief statement of the situation of the parties will make clear the occasion giving rise to the claim of Swift Lumber & Fuel Company. The statement assumes the facts to be as claimed by Swift. Johnson owned several lots in College View and was desirous of improving them by building houses. He first applied to Swift to furnish the lumber and other materials, and then to the appellant for loans upon the lots to assist him in his undertaking. Prior to the making of the loan or the delivery of any materials, Swift and Johnson went to the place of business of appellant and had a conversation with Bechter and Miller, officers of appellant, in which Swift said they would like to furnish the lumber, but wanted to know where his money was coming from, and was informed that the appellant was making the loans to Johnson, and thereupon the oral promise upon which Swift relies, as above set out, was made. Thereafter and before any materials were furnished, as far as that question is material, mortgages were executed to appellant and recorded, the erection of the buildings commenced, and Swift furnished labor and materials for which he now claims a prior lien.

The materials furnished by Swift were charged on the books of the lumber company to Johnson and bills rendered to him, copies being sent to appellant; there was no charge on the books against appellant. The money represented by the loans was paid out as the building progressed by checks to Johnson, and the lumber company was paid by Johnson's checks, never by *appellant*. Under these circumstances, was the promise of appellant original or collateral? It seems to me the case is absolutely ruled by that of *Williams v. Auten,* 62 Neb. 832, the syllabus of which is as follows:

"Where goods, money or services are furnished to a third person, at the request and on the credit of the promisor, the undertaking is original and the promisor will be liable although the promise is not in writing. *Peyson v. Conniff,* 32 Neb. 269.

"Where, however, goods are furnished to a third party at the request of a promisor and with reliance on his credit, and the transaction is such that the third party or beneficiary is liable therefor to the promisee as an original undertaking on his part, and there being no joint contract, the promisor's liability is collateral only as guarantor, and unless in writing is void under the statute of frauds."

In that case the promise was made before any of the goods were delivered, and yet, because the party receiving the goods was liable therefor, the promise was held to be collateral. In *Williams v. Auten,* page 835, Holcomb, J., says:

"We are not dealing with a case where an agreement upon a valid consideration is entered into, whereby one obligates himself to pay for goods or services for the benefit of and furnished or rendered to a third party, such third party having no other or further interest in or connection with the transaction save that of being the recipient of the benefits thus bestowed. In the class of cases referred to, the promise, although verbal, is clearly an original undertaking in no way affected by the statute of frauds. In such cases the contract is made with, and the credit is given exclusively to, the party sought to be charged, and his obligation is that of a principal, and not a guarantor. Regarding

these cases the rule is well stated in *Peyson v. Conniff*, 32 Neb. 269, where it is held: 'Where goods, money, or services are furnished to a third person, at the request and on the credit of the promisor, the undertaking is original and the promisor will be liable although the promise is not in writing.' The rule stated is well supported by the authorities cited in the opinion. Nor is the case at bar one where two or more may become jointly obligated under an agreement entered into by all the parties thereto for goods or services, even though but one of the contracting parties or a third party may receive the thing contracted for and be the beneficiary under the contract."

These observations seem to precisely fit the situation of the present case. It is not a case where the third party is not liable, nor is it a case where the third party and appellant incurred a joint liability. There is some claim that Johnson and appellant were engaged in a joint undertaking, but the evidence will not warrant any such inference. The relations between those parties were the ordinary ones of borrower and lender, the appellant having no interest in the result of the undertaking beyond the repayment of its loan and interest. In *Williams v. Auten,* page 837, Holcomb, J., further observes:

"The object and intent of the statute, says Reed in his work on the Statute of Frauds, section 87, is to deny the imposition of a liability by parol on two persons to pay the debt of one. See, also, *Hendricks v. Robinson & Stevens*, 56 Miss. 694, 699. The authorities appear entirely harmonious in support of the rule that, if the beneficiary or person for whose use the goods are furnished is liable at all by reason thereof, any other promise by a third person to pay the same debt must be in writing, otherwise it is void by operation of the provisions of the statute of frauds."

In my judgment it would be a dangerous rule, and one calculated to permit the perpetration of the very frauds against which the statute was intended to guard, in this class of cases, to permit a party furnishing labor or materials for the erection of a building to recover upon a verbal

promise by the owner or lender, the building and loan association furnishing the money, to pay for such materials. True, where the money loaned is paid out as the building progresses it is to the interest of the lender to see that materials are paid for by the borrower, but if the materialman expects to rely upon the money loaned for payment, it is a very simple matter to make the arrangement with the lender and take a written promise for that purpose. This should be, and I think clearly is, the requirement of the statute of frauds. It is true that the lender has an interest in the completion of the building for the better security of his loan, but this is not such an interest as will convert a collateral promise into an original one. Where the owner, to secure completion of the building, promised a laborer to pay him, provided he would continue work, if the contractor did not, the promise was collateral, the benefit to the owner being too remote to furnish an independent consideration. *Morrissey v. Kinsey,* 16 Neb. 17. In that case the court distinguished *Fitzgerald v. Morrissey,* 14 Neb. 198, where the agreement was to work for the promisor, the subcontractor not being thereafter liable to the promisee. The case of *Ribock v. Canner,* 218 Mass. 5, is directly in point. There the mortgagee under a construction mortgage verbally promised that, if the contractor would go on with his work under his contract with the builder, the mortgagee would pay him the amounts that became due to him under his contract. It was further held that proof of a valuable consideration for the verbal promise or of partial payments would not remove the bar of the statute. *Birchell v. Neaster,* 36 Ohio St. 331, is to the same effect, and also holds that the fact that there was due from the promisor to the contractor at the time of the promise a sum sufficient to pay the balance due the promisee did not take the case out of the statute.

Appellee contends that an oral promise to pay a debt of another and which debt is not then in existence is not within the statute of frauds, citing 27 C. J. 130, sec. 15, which, among a large number of cases, cites *Learn v. Upstill,* 52

Neb. 271. That was a case where no person other than the promisors were liable for the debt, and the statement of the text as applied to that class of cases is correct. But in 27 C. J. 130, sec. 17, it is stated: "An oral promise to answer for the debt of another made before the debt is incurred is within the statute, where such promise is a collateral as distinguished from an original promise." The text is supported by *Wagner v. Hallack,* 3 Colo. 176, where the owners of the building said, "We will see the articles paid for," and they were shipped and charged to the contractor; *Whitehurst v. Padgett,* 157 N. Car. 424, where the third party remained liable; *McDowell, Stocker & Co. v. Sharp,* 157 Ill. App. 165; *Reelman v. Grosfend,* 140 Mich. 681; *Frohardt Bros. v. Duff,* 156 Ia. 144; *Wray v. Cox,* 86 Miss. 638; *Gidley v. Glass,* 41 N. Dak. 542, goods furnished relying upon promise that promisor would see them paid for. There seems to be no dispute that, where the promise is collateral, it is immaterial whether the debt to which it refers was contracted before or after the promise.

In 27 C. J. 132, sec. 20, is the following: "Although the words 'original' and 'collateral' as applied to promises do not occur in the English statute of frauds, they were used at an early day, and their use has been sanctioned and approved by the courts and text-writers as convenient and accurate expressions to distinguish respectively between the cases in which the direct and leading object of the promisor is to further or promote some purpose or interest of his own, although the incidental effect thereof may be the payment of the debt of another, and those cases in which such object is to become the surety or guarantor of the subsisting debt of another for which the promisor was not previously liable. The former are designated as original, the latter as collateral, promises. A collateral promise whether made before, or after, or contemporaneously with the promise of the primary or original debtor is within the statute and must be in writing, while an oral original promise is not within the statute, because, although its effect may be to extinguish the debt of another, it is not a promise to do so."

This statement is followed by over two pages of citations.

It cannot be said that the principal object of the appellant in this case was to secure the furnishing of materials for the buildings in question. The business of appellant was the loaning of money at interest, and its principal object clearly was to invest its funds at interest. It had no further interest in the undertaking.

Appellee cites *Lindsey v. Heaton*, 27 Neb. 662, to the effect that: "The promise having been made prior to the delivery of any of the property sold, and such sale and delivery having been made upon the faith of the agreement of the promisor, it was sustained by sufficient consideration and the promisor was liable thereon." This statement was made with reference to the consideration for the promise, not as to the collateral nature of the promise. It was held that the evidence sustained the finding that the promise was unconditional, and therefore original. The language of the promise was, "I will pay it and charge it to him," a direct, unconditional promise to pay. In that case, moreover, it appeared that the party furnishing the goods refused to allow them to leave his store until the defendant had made a direct promise to pay for them. However, so far as prior delivery of goods is concerned as affecting the nature of the promise, while the *Lindsey* case is not referred to, it is clearly contrary to the holding in *Williams v. Auten*, 62 Neb. 832, *supra*, and *Swigart v. Gentert*, 63 Neb. 157, if the holding as to consideration is applied to the question of the nature of the undertaking, which does not seem logical.

The following cases cited by appellee are distinguishable and are not in point for the reasons stated:

*Peyson v. Conniff*, 32 Neb. 269, a direct promise by which the leading object of the promisor was to promote his own interest.

*Joseph v. Smith*, 39 Neb. 259, a direct promise to pay the debt in consideration that the promisee would release a lien upon certain stock. This was a subsequent independent contract.

*Barras v. Pomeroy Coal Co.,* 38 Neb. 311, a direct promise after promisee had refused to furnish any more material. In the present case appellee not only did not refuse to furnish any material, but after it had notice that appellant refused to pay, continued to furnish them to Johnson.

*Barnett v. Pratt,* 37 Neb. 349, a suit on a promise made to a third party for plaintiff's benefit. There was no question of the statute of frauds.

*Swayne v. Hill,* 59 Neb. 652, a new and independent promise to prevent levy of execution on partnership property.

*Weilage v. Abbott,* 3 Neb. (Unof.) 157, a promise to pay plaintiff's attorney's fees if suit were dismissed.

*Stanton Nat. Bank v. Swallow,* 113 Neb. 336, a new and independent consideration and, furthermore, the promise was to take up or pay the debt of the promisee, not of a third party.

We conclude that the order of reversal should be adhered to.