EVA IRENE GRIMES, APPELLEE, V. J. L. BAKER, APPELLANT.

273 N. W. 789

FILED JUNE 11, 1937. No. 30000.

*Gaines, McLaughlin & Gaines,* for appellant.

*Clarence T. Spier* and *Arthur C. Bailey, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and LIGHTNER, District Judge.

PAINE, J.

Plaintiff brought suit in the district court to recover damages sustained by reason of defendant's failure and refusal to fulfil a verbal statement to save plaintiff harmless from

any loss she might suffer by reason of her purchase of shares of stock of the Universal Gypsum & Lime Company, of Chicago, Illinois, recommended by him.

Defendant alleged in his answer that he acted purely as the agent of the plaintiff in the purchase of said stock from George E. Sipple, its owner, and that the agreement alleged by plaintiff to repurchase the stock was barred by the statute of limitations, and void under the statute of frauds, and was *nudum pactum*. The jury returned a verdict for $1,379.23, from which the defendant appeals.

The plaintiff alleged that defendant was a substantial stockholder and director in said company, with full and complete knowledge with respect to the financial status of said corporation; that in 1926 defendant solicited plaintiff to purchase stock of said company, and verbally agreed with plaintiff that defendant would repurchase said stock and would save her harmless from any loss which she might sustain through such investment; that such solicitation and negotiations were carried on between the defendant and the mother of the plaintiff, who was acting for and on behalf of the plaintiff; that the plaintiff, relying upon defendant's agreement, paid $1,530 for the stock so purchased through defendant; that the said company later went into bankruptcy, and was merged with another company under the name of National Gypsum Company, and the stock becoming practically worthless, the plaintiff on February 15, 1935, demanded that defendant repurchase her stock. Upon defendant's refusal, this action was brought, asking for verdict and judgment for the amount of her outlay, less the present value of the stock into which the original shares of stock had been merged.

The jury deducted $241, being the value of the new shares substituted, and added 6 per cent. interest from the date of the demand to the date of the verdict, and thus arrived at the verdict of $1,379.23, for which amount judgment was entered.

Among the errors relied upon for reversal by the defendant are that the court erred in overruling defendant's

motion for a directed verdict at the close of the evidence, and in holding that defendant was under any contractual obligation to plaintiff. Defendant especially insists that the court erred in holding that the statement made by the defendant constituted a binding contract, and insists there was no consideration whatever for the alleged agreement, which is *nudum pactum* and unenforceable, and being oral it was void under the statute of frauds, and, finally, that the court erred in holding that the claim was not barred by the statute of limitations.

It appears that the defendant, in conversation with plaintiff's mother at Fremont, recommended this stock as a good investment, and later the mother came to Omaha and, while taking lunch with defendant at the Omaha Athletic Club, the conversation occurred upon which the suit is founded.

The appellee insists that four times this court has rendered opinions which support a recovery by the plaintiff in this case, and it is necessary to examine these opinions.

In the case of *Griffin v. Bankers Realty Investment Co.*, 105 Neb. 419, 181 N. W. 169, it is stated that the plaintiff purchased certain shares of stock, and that the agent of the defendant company in making the sale of such stock made an oral contract and agreement with the plaintiff whereby the defendant company agreed, if said stock was presented to it at any time within a period of four years, to repurchase such stock with interest at 7 per cent. on demand. It was held that the sale of the stock and the repurchase agreement were one and the same transaction, and that such a contract made by a corporation is not *ultra vires,* and that the defendant company could not be heard to say that the sale was valid so far as the purchase of the stock was concerned, and void so far as its repurchase was concerned, as it was a single transaction and constituted but one contract.

In *Trenholm v. Kloepper*, 88 Neb. 236, 129 N. W. 436, plaintiff purchased ten shares of the capital stock of a corporation, and claims that the defendant, to induce her to

buy the stock, orally agreed to repurchase the same. The defendant testified that in these negotiations he acted solely as the agent of the corporation whose stock he was selling.

In *Stratbucker v. Bankers Realty Investment Co.*, 107 Neb. 194, 185 N. W. 271, plaintiff purchased shares of stock in the defendant company upon the promise made by its agent at the time of purchase that the defendant company would repurchase such stock at any time after the expiration of one year upon plaintiff giving 30 days' notice to the defendant company. He further made representations that said defendant company had a fund of $100,000, duly deposited in a bank, for the express purpose of meeting such demands of those who bought stock.

In *Grotte v. Rachman*, 114 Neb. 284, 207 N. W. 204, the plaintiff owned stock in the Burgess Nash Company, and the defendant Rachman was an agent engaged in the sale of the stock of Stroud & Company, and he induced plaintiff to switch her Burgess Nash stock for the stock which he was selling of the same face value. As part of the transaction the defendants agreed that they would, at any time that plaintiff needed money, repurchase such Stroud & Company stock at its face value with 7 per cent. interest.

It will be seen from this brief statement of the facts in these four Nebraska cases that no one of them is quite in point with the case at bar.

In the instant case, when the mother of the plaintiff disclosed that her daughter had a little money for which she was seeking investment, what was more natural than that the defendant would recommend to her as an investment stock in the Universal Gypsum & Lime Company of Chicago, in which his stock holdings were substantial? He stated that he had received not only regular dividends, but that there had been stock dividends issued, and that there was a plan for buying up small gypsum companies and forming a larger company. He was so certain of the intrinsic value of this Universal Gypsum & Lime Company stock that he made the statement while they were lunching at the Omaha Athletic Club that he would take it off the

daughter's hands at any time she desired to sell it. He consented, at the mother's request, to go into the open market and arrange for the purchase of stock for them. The defendant did not sell stock of the company itself, as a promoter or agent would have done, to increase the assets of the company, nor did he arrange to sell stock which he owned. He did not receive one cent of commission, nor benefit in any way through the purchase of these few shares of stock in the open market in this large corporation. No complaint of any kind was made to the defendant for more than five years after the purchase was made.

Several of the cases cited by appellee, and other Nebraska cases, are discussed in 12 Neb. Law Bulletin, 200, and it is indicated that the original sale affords a good consideration for the option to return the stock to the original seller and receive the money paid under such an agreement, but nowhere is it stated that a third party, who has no financial interest therein, can be so held. See recent annotations on this question in 88 A. L. R. 842 and 101 A. L. R. 154.

In our opinion, the statement of the defendant that he would repurchase the stock was naked of any obligation, and, being a *nudum pactum,* is not enforceable. Judgment reversed and action dismissed.

REVERSED AND DISMISSED.