Lon King and Ned Waechter, a partnership, doing business as Arctic Air Conditioning, appellees, v. Violet A. Schmall, appellant.

57 N. W. 2d 287

Filed March 6, 1953. No. 33249.

*Clarence M. Pierson* and *Elmer M. Scheele,* for appellant.

*C. J. Campbell* and *J. Jay Marx,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This action was brought by Lon King and Ned Waech-

ter, partners doing business as Arctic Air Conditioning, in the district court for Lancaster County against Violet A. Schmall. Therein plaintiffs seek to recover money claimed due them under an alleged oral contract. The jury returned a verdict for the plaintiffs in the sum of $1,992 on which the trial court entered judgment. Defendant thereupon filed a motion asking for either a judgment notwithstanding the verdict or a new trial and has appealed from the overruling thereof. We shall refer to the parties as they were denominated in the original suit.

Section 36-202, R. R. S. 1943, provides, insofar as here material, as follows: "In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith: * * * (2) every special promise to answer for the debt, default, or misdoings of another person; * * *."

The principal question raised by this appeal is, does the promise made by defendant, as testified to by Waechter, one of the partners, come within the foregoing section of this statute? This, in turn, presents the question of whether or not it was an original promise resting upon a sufficient consideration or a promise to pay the debt of Messerschmidt, as it was not in writing.

"This statutory provision has been considered on numerous occasions by this court and its meaning has not been extended or expanded by interpretation. Recent cases are Grimes v. Baker, 133 Neb. 517, 275 N. W. 860; Johnson v. Anderson, 140 Neb. 78, 299 N. W. 343." In re Estate of Allen, 147 Neb. 909, 25 N. W. 2d 757.

" 'Where goods, money or services are furnished to a third person, at the request and on the credit of the promisor, the undertaking is original and the promisor will be liable although the promise is not in writing. Peyson v. Conniff, 32 Neb. 269.' " Union Loan & Savings Assn. v. Johnson, on rehearing, 118 Neb. 24, 223 N. W. 469. See, also, Lindsey v. Heaton, 27 Neb. 662, 43

N. W. 420; Waters v. Shafer, 25 Neb. 225, 41 N. W. 181; Elson v. Nelson, 132 Neb. 532, 272 N. W. 551.

"Where, however, goods are furnished to a third party at the request of a promisor and with reliance on his credit, and the transaction is such that the third party or beneficiary is liable therefor to the promisee as an original undertaking on his part, and there being no joint contract the promisor's liability is collateral only as guarantor, and unless in writing is void under the statute of frauds." Williams v. Auten, 62 Neb. 832, 87 N. W. 1061. See, also, Union Loan & Savings Assn. v. Johnson, *supra*.

"A consideration to support a promise, not in writing, to pay the debt of another must operate to the advantage of the promisor, and place him under a pecuniary obligation to the promisee independent of the original debt, which obligation is to be discharged by the payment of that debt." In re Estate of Allen, *supra*. See, also, Johnson v. Anderson, 140 Neb. 78, 299 N. W. 343; Swayne v. Hill, 59 Neb. 652, 81 N. W. 855; Joseph v. Smith, 39 Neb. 259, 57 N. W. 1012, 42 Am. S. R. 571; Rogers v. Empkie Hardware Co., 24 Neb. 653, 39 N. W. 844; Fitzgerald v. Morrissey, 14 Neb. 198, 15 N. W. 233; 25 R. C. L., Statute of Frauds, § 79, p. 495; 49 Am. Jur., Statute of Frauds, § 75, p. 429.

"An agreement without consideration is nudum pactum and unenforceable." Grimes v. Baker, 132 Neb. 898, 273 N. W. 789.

"In an action to recover for services rendered to a third person the general rule is that, if the person for whose benefit the promise was made is himself liable, the promise of the defendant, although made before the services were rendered, is collateral, and within the statute of frauds." Swigart v. Gentert, 63 Neb. 157, 88 N. W. 159. See, also, Union Loan & Savings Assn. v. Johnson, *supra;* Morrissey v. Kinsey, 16 Neb. 17, 19 N. W. 454.

In Union Loan & Savings Assn. v. Johnson, *supra,* we

quoted with approval the following from 27 C. J., Frauds, Statute of, § 17, p. 131: "An oral promise to answer for the debt of another made before the debt is incurred is within the statute, where such promise is a collateral as distinguished from an original promise."

In reviewing the testimony to determine this question we apply the following rule: "In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom." Borcherding v. Eklund, ante p. 196, 55 N. W. 2d 643. This is the same rule that would be applicable if we were testing the evidence to determine whether or not it presented a jury question in the first instance.

The evidence discloses that on May 12, 1950, defendant was the owner of Lots 14 and 15, Block 9, Zehrung and Ames Addition to the city of Lincoln, the address of which is 2740-2746½ Garfield Street; that on said date she entered into a written contract with Arnold Messerschmidt for the construction of four duplexes on the above premises, same to be completed on or before September 15, 1950; that on May 29, 1950, Messerschmidt put up a bond guaranteeing the performance of his contract in accordance with the drawings and specifications, work to commence on June 1, 1950; that on May 17, 1950, Messerschmidt subcontracted to plaintiffs the furnishing and installation of the heating in these four duplexes, which was included in his contract with the defendant; that by this contract plaintiffs agreed to furnish and install eight T. B. Atlas gas furnaces in these four duplexes, being a separate heating plant for each unit; that Messerschmidt agreed to pay plaintiffs for furnishing and installing these eight furnaces the sum of $1,992, being $1,400 for the eight furnaces and $592 for the installation thereof; that immediately after entering into this contract plaintiffs bought the eight fur-

naces to be used for this job and placed them in storage in their warehouse; that on or about July 18, 1950, plaintiffs made and delivered to the premises eight roof jacks which the carpenters installed; that sometime in August plaintiffs furnished and installed metal boxes for the hot-air registers; that on August 30, 1950, plaintiffs delivered the eight furnaces to the premises and stored them in one of the apartments; that on the same day they sent Messerschmidt a statement therefor in the sum of $1,400 advising him he would be billed for the balance on completion of the installation; that they again billed Messerschmidt to the same effect on October 3, 1950, and on November 1, 1950; that plaintiffs completed the installation of the eight heating units on November 10, 1950; that on either November 15 or 16, 1950, plaintiffs contracted with Messerschmidt to connect the gas furnaces with the meters for a consideration of $133, this work not being a part of their original contract, and did so on November 17, 1950; that on either November 29 or 30, 1950, Messerschmidt asked plaintiffs to change some kitchen registers which they agreed to do and which they did on December 1, 1950, charging Messerschmidt therefor the sum of $37.50; that on December 6, 1950, plaintiffs sent Messerschmidt a statement in the amount of $2,162.50, being the total of the amounts due under the three separate agreements with him; that on January 18, 1951, plaintiffs filed a mechanic's lien against the premises for the full amount of $2,162.50, setting forth the defendant as owner thereof and Messerschmidt as the contractor for whom they had performed the services; that this mechanic's lien was filed out of time and did not establish a lien for the item of $1,992 for which recovery was here had; and that Messerschmidt has never paid this bill or any part thereof, he having filed a petition in bankruptcy on January 1, 1952.

Messerschmidt failed to complete the duplexes within the time as provided in his contract and because thereof

defendant defaulted his contract on December 14, 1950. This action was commenced on June 21, 1951, and seeks to hold defendant liable for the eight furnaces furnished and installed by plaintiffs in the four duplexes constructed on the premises owned by the defendant.

The evidence on which this recovery is based is as follows:

Waechter, one of the plaintiffs, testified that after the furnaces were taken out to the premises and they had billed Messerschmidt for them and received no money, that: "We did not receive any money, so we stopped work on them until we got our money for our furnaces at least." He also testified: "I thought maybe that way I could force somebody to give me some money." And, "Well, primarily we wasn't getting any money, and didn't want to proceed with the work until we could see some money coming in."

Henry Mara, plaintiffs' salesman, testified that sometime after the furnaces were taken to the premises defendant called the plaintiffs' office by telephone and talked with him stating that she wanted to get the furnaces installed as it was getting cold and she wanted to get the apartments finished and rented as soon as possible. He testified he advised her that plaintiffs would not do anything further until they received some money.

Waechter's and Mara's testimony is to the effect that sometime shortly before the middle of October defendant came to their office, located at 713 North 17th Street, in Lincoln, and talked with Waechter. This was a week or 10 days after she had called the office and talked with Mara. Waechter's testimony as to what she said on this occasion is as follows: "* * * she sat down and told me what the circumstances were pertaining to the contract, and how much trouble she was having with Messerschmidt; that he wasn't getting the job completed, and wanted to know what she could do to expedite it. She sat there and talked to me about it, and I told her

we hadn't received any money for the furnaces, and she told me, 'You don't have to worry. I have Mr. Messerschmidt bonded. I'll see you get your money.'"

Waechter testified she called the office about a week later and talked with him on the telephone. Mara corroborates this testimony, he having listened in on an extension. Waechter's testimony of what transpired is as follows: "She called up and wanted to know why we hadn't got the furnaces in. I told her we hadn't received any money yet, and we were afraid of Messerschmidt, and we weren't going to bill him for the installation until we got done, but we wanted our money for the furnaces." "She said, 'We have to have heat out there. The plasterers need it, and the painters need it, and I am supposed to have this thing done so people can move in, and I can still get them rented,' or something to that effect." "She said, 'You don't have to worry about that. I have Mr. Messerschmidt bonded, and I'll see you get your money.'" "Then I said, 'All right. We will start on them immediately.'" The work of installation was started within 2 days after this conversation.

Waechter testified he relied upon this promise and would not have installed the furnaces if it had not been made. But that fact would not enlarge or extend the scope of the agreement itself. He must recover, if at all, upon the agreement he testified they entered into.

As stated in Williams v. Auten, *supra*: "We are not dealing with a case where an agreement upon a valid consideration is entered into, whereby one obligates himself to pay for goods or services for the benefit of and furnished or rendered to a third party, such third party having no other or further interest in or connection with the transaction save that of being the recipient of the benefits thus bestowed."

Plaintiffs had entered into an agreement with Messerschmidt whereby they were to furnish and install eight furnaces in the four duplexes which Messerschmidt

had, prior thereto, contracted to construct, including these heating units, for defendant. At the time of this oral agreement plaintiffs had furnished the eight furnaces by delivering them to the premises and billing Messerschmidt therefor. This is evidenced by the fact that Waechter, when talking to the defendant, told her, "* * * we hadn't received any money yet, * * * we were afraid of Messerschmidt, * * * we wanted our money for the furnaces." In response to this defendant replied, "You don't have to worry about that. I have Mr. Messerschmidt bonded, and I'll see you get your money." The reply of defendant was clearly a promise to answer only for this obligation of Messerschmidt. That plaintiffs were not seeking to hold defendant for the installation, but were looking to Messerschmidt in regard thereto, is evidenced by the following from Waechter's testimony: "* * * we weren't going to bill him for the installation until we got done, * * *." This is further evidenced by the fact that they billed Messerschmidt for the full amount, including the installation charges, on December 6, 1950.

We think the promise made by defendant, as testified to by Waechter, is, within the principles hereinbefore set forth, a promise to answer for the debt of Messerschmidt for the eight furnaces which plaintiffs had then furnished. But even if it could be construed that her promise was also to cover the installation thereof, which we find it did not, it would not be binding on defendant, for as stated in Union Loan & Savings Assn. v. Johnson, *supra*: "Where the owner, to secure completion of the building, promised a laborer to pay him, provided he would continue work, if the contractor did not, the promise was collateral, the benefit to the owner being too remote to furnish an independent consideration. Morrissey v. Kinsey, 16 Neb. 17."

And as stated in Union Loan & Savings Assn. v. Johnson, *supra*: "'* * * The authorities appear entirely harmonious in support of the rule that, if the bene-

ficiary or person for whose use the goods are furnished is liable at all by reason thereof, any other promise by a third person to pay the same debt must be in writing, otherwise it is void by operation of the provisions of the statute of frauds.' (Williams v. Auten, 62 Neb. 832, 87 N. W. 1061.)"

Although the promise is void, can defendant be held liable for the fair and reasonable value of the furnaces solely because she is the owner of the premises and, because thereof, received the benefit of their installation? We think not. At the time the promise was made Messerschmidt was under contract to build these duplexes for a contract price, which defendant has paid. At that time plaintiffs were under contract with Messerschmidt to furnish and install the furnaces, which they did. Defendant received nothing by reason of their installation which she was not entitled to under her contract with Messerschmidt, for the performance of which she had required him to give a good and sufficient bond. Under our holdings, which have herein been set forth, it was only a collateral agreement to pay Messerschmidt's obligations. See Morrissey v. Kinsey, *supra*. She did not become liable by reason thereof. Neither will defendant be unjustly enriched by reason thereof as she has paid the contract price for the duplexes, which included the furnishing and installation of the furnaces.

In view of what we have herein held we find the trial court was in error in submitting the case to a jury, but, having done so, it should have sustained defendant's motion for judgment notwithstanding the verdict. We therefore reverse the action of the trial court and remand the cause with directions that the defendant's motion for a judgment notwithstanding the verdict be sustained.

REVERSED AND REMANDED WITH DIRECTIONS.