E. MAX GLADSTONE, administrator *de bonis non* with the will annexed, *vs.* BANK OF COMMERCE & TRUST COMPANY & others.

Suffolk.   October 4, 5, 1932. — November 29, 1932.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Probate Court*, Insolvent estate, Findings by judge, Accounts, Decree, Appeal. *Executor and Administrator.*

At the hearing in a probate court of the final account of the executor of a will, it appeared that the testator by the will gave a business owned by him to his son and that the executor was authorized by the Probate Court to continue the business for one year from the date of his appointment. There was evidence that he did continue it until about two months after the expiration of said year, at which time he conveyed the assets of the business to a nominee of the testator's son upon the nominee's promise to pay all the debts of the business then existing; that the total of the debts then was $20,000, of which $8,000 had been incurred previous to the testator's death; that the nominee subsequently fulfilled his promise; and that the actual value of the assets of the business was less than $20,-000, although the books of the business and a certain petition signed by the executor stated a value of more than $20,000. It further appeared that the business was valued in Schedule A of the account at $20,000; that the estate was represented as insolvent about three months after said conveyance; and that it was insolvent. The judge of probate ordered the executor charged with a sum of $8,000 "as money paid out in preference of certain creditors . . . without prejudice" to the executor's right by subrogation to any sums to which such creditors might be found entitled in the insolvency proceedings. Upon appeal by a creditor, the evidence being reported without specific findings of fact by the judge of probate, it was *held,* that

(1) There was no merit in a contention by the appellant that the assets of the business were worth more than $20,000: the judge of probate properly could have found their value to be $20,000;

(2) The executor was not to be charged with a loss, if there were a loss, incurred during his operation of the business by reason of his having continued it beyond the expiration of the year following his appointment: the judge of probate properly could have found that such loss, if there were one, would have been exceeded by the loss in value of the assets of the business which would have resulted had it been terminated and not sold as a going concern;

(3) Assuming that it was open to the executor on this appeal to question the provision of the decree charging him with $8,000, there was no error in such provision: although the executor himself actually paid no money to creditors, in substance the assets of the business were used to pay its creditors and to the extent of $8,000 such payments were in preference of creditors

(4) The decree was affirmed.

PETITION, filed in the Probate Court for the county of Suffolk on November 14, 1929, for allowance of the substituted first and final account of the petitioner as administrator *de bonis non* with the will annexed of the estate of Paul Epstein, late of Boston.

The account was heard by *Dolan,* J., a stenographer having been appointed under G. L. c. 215, § 18, as amended. Material evidence, a decree on the account entered by order of the judge and appeals therefrom are described in the opinion.

*L. B. Newman,* for the respondent Bank of Commerce & Trust Company.

*Lee M. Friedman & L. B. King,* for executors of the will of Frank Epstein, submitted a brief.

*W. H. Irish & E. M. Gladstone,* for petitioner, submitted a brief.

*D. W. Corcoran, E. M. Dangel, & L. Aronson,* by leave of court, submitted a brief as *amici curiae* on behalf of Metropolitan Casualty Insurance Company of New York.

LUMMUS, J.   Paul Epstein, a dealer in electrical supplies in Boston, died February 18, 1925, leaving a will by which he gave his real estate and mortgages to his wife, Mary Epstein, and his business and business assets to his son Samuel Epstein, otherwise called Shepard S. Epstein. One Frank A. Epstein was appointed executor on April 9, 1925, and on May 7, 1925, was authorized by the Probate Court under G. L. (Ter. Ed.) c. 195, § 7, to continue the business until April 9, 1926.   He did continue the business as executor until his death on December 6, 1925.   On December 12, 1925, E. Max Gladstone, son-in-law of the testator, was appointed administrator with the will annexed of the estate not already administered.   The appraisal

made January 8, 1926, showed personal property of $20,000, consisting of the stock, fixtures and accounts receivable of the business, and real estate of $90,000, consisting of the equity of redemption in nine new buildings begun by the testator and completed by the executor. The estate was represented insolvent on September 15, 1926, and commissioners allowed claims in the sum of $14,454.68 exclusive of claims incurred in the business and already satisfied as hereinafter stated.

The administrator with the will annexed of the estate not already administered negotiated, during February and March, 1926, an arrangement with Samuel Epstein, the legatee of the business, by which Samuel Epstein was to take over the business and pay its debts. These negotiations resulted, on June 14, 1926, in a conveyance of the assets of the business, including accounts receivable, to one A. Joel Cantor, a nominee of Samuel Epstein, upon the terms that Cantor should make no claim for about $4,500 withdrawn from the business by the executor for the benefit of the estate generally, but should obligate himself with a chattel mortgage as security to pay all the debts of the business existing on June 14, 1926, amounting to more than $20,000, of which debts to the amount of $8,429.43 existed when the executor took over the business. Until the conveyance to Cantor the business continued in operation. All the business debts have been paid, or, in some cases, barred by the statute of limitations. The equity of redemption in the real estate netted only $5,936.96. With sundry expenses deducted from the assets, the first and final account of the administrator with the will annexed of the estate not already administered showed nothing for the creditors.

Upon a hearing on the account, the Probate Court treated the case as though Cantor had paid the accountant the sum of $20,000 in cash for the business assets shown as of that value in Schedule A, and the accountant had used that sum to pay the business debts, of which $8,429.43 antedated the taking over of the business by the executor. Of that $8,429.43 thus theoretically used in satisfaction of debts entitled to no preference, the accountant recovered

$840.87 in some way from the trustee in bankruptcy of the corporation which Cantor formed to continue the business, leaving the net outlay $7,588.56.    The Probate Court charged the accountant with that sum "as money paid out in preference of certain creditors . . . without prejudice to any right of accountant to subrogation to any *pro rata* payment to which those creditors may be found to be entitled in the settlement of the estate of the deceased as insolvent." Apparently the accountant did not comprehend that there was but one class of assets and one class of debts existing at the death of the testator.    *Cobb* v. *Muzzey*, 13 Gray, 57. *Jackson* v. *Wood*, 108 Ala. 209.    Certain other items of the account were modified by the Probate Court in ways not now material, the balance due from the accountant was fixed at $8,476.56, and the account as thus amended was allowed by decree entered March 24, 1931.    The Bank of Commerce & Trust Company, a creditor, appealed, as did Edward Rose and the United States Trust Company, executors under the will of Frank A. Epstein, the executor. The evidence is reported, but no express findings of material facts were made.    The question before us is whether the decree is plainly wrong upon the evidence, much of which was oral.    *Old Corner Book Store* v. *Upham*, 194 Mass. 101, 106.    *Cook* v. *Mosher*, 243 Mass. 149.

The appellants urge that the business assets were worth more than the $20,000 at which both the account and the decree fixed their value, and at which in substance they were sold.    Although the books of the business and a petition signed by the accountant on March 18, 1926, state a higher value, there was evidence from the accountant that the actual value was much less than $20,000.    The Probate Court justifiably accepted the accountant's figure of $20,000 stated in the account.

The appellants further contend that the accountant did wrong in continuing the business until the sale to Cantor on June 14, 1926, and should be charged with the loss incurred during his operation of the business.    It is true that the books showed a loss of $7,387.04 from January 1, 1926, to June 14, 1926, although there was testimony from

the accountant that there was no such loss in fact. But the judge was justified in finding that the loss in value of the assets that would have resulted from closing the business, so that it could not have been sold as a going concern, would have exceeded the loss incurred in its operation.

The accountant, although he claimed no appeal, now seeks to have the decree modified by striking out the sum of $7,588.56 for which he was charged as money paid out in preference of certain creditors. He directs attention to the fact that actually he paid no money to the creditors. If this contention is open on the appeals of adverse parties (see *Harris* v. *Harris*, 153 Mass. 439, *Creed* v. *McAleer*, 275 Mass. 353, 362; compare G. L. [Ter. Ed.] c. 215, §§ 9, 28, *Kilkus* v. *Shakman*, 254 Mass. 274, 280, *Sunter* v. *Sunter*, 204 Mass. 448, 455), we see no error. The accountant admitted in his account that the business assets were worth $20,000, and it is immaterial whether the accountant received their value in cash and distributed it among the business creditors, or conveyed the assets without receiving any cash, leaving Cantor to pay the creditors. In substance, the business assets were used to pay the business creditors. If Cantor failed to pay some of the debts, amounting to $8,429.43, existing when the executor took over the business, then to the extent of such failure the accountant did not obtain full consideration for his conveyance of the business assets, and it would have been as proper to charge him on that ground as on the ground that he had in effect received cash and paid it out improperly in preference of certain creditors.

*Decree affirmed.*