[Civ. No. 12835. Second Appellate District, Division Two.—December 16, 1940.]

In the Matter of the Estate of ANTONE MADDALENA, Deceased. ANGELENA MADDALENA et al., Appellants, v. WILLIAM D. KELLER, Administrator, etc., Respondent.

Ratzer & Bridge and Henry E. Bianchi for Appellants.

Bay, Sturges & Thompson for Respondent.

MOORE, P. J.—This appeal is taken by the heirs at law from an order of the court approving the account current and report of the administrator.

Antone Maddalena departed this life in August of 1937 leaving about eighty acres of land near the city of Lancaster, together with a small residence, miscellaneous farming equipment, livestock and personal property. William D. Keller, a stranger in blood to the decedent, qualified as administrator on or about October 7, 1937, and continued farming operations on the property until he filed his account. When he took charge he found twenty of said acres growing alfalfa. Thirty acres thereof had been formerly planted to the same crop but it had deteriorated to grazing land. His home was a small frame house, partly without floors. Nearby was a well with an old pump which supplied water at the time sufficient for the irrigation of the twenty acres.

In addition to the appellants, decedent left surviving him his wife Carmela who, about the month of December, 1937, was married to Noah Schism. The two continued to reside in the old home and in the new one which later replaced it.

When the administrator took possession of the estate, it was indebted in a sum not to exceed $750. Without first obtaining an order to do so he proceeded to carry on the farming operations, to make certain permanent improvements on the land and to enlarge the productive area. Also he caused the house and contents to be insured for $750. All this resulted in numerous expenditures, and appellants have objected to some 92 items of the expenses so incurred.

On February 12, 1938, the administrator applied to the court for authority to borrow $1,000 for the purpose of paying a power bill in the sum of $250, for repairing the water system, about $200; for the purchase of alfalfa seed in the sum of $250, for labor in the sum of $200 and for rental of equipment in the sum of approximately $225. Notice was served upon all the objectors except Angelena, who had not yet appeared. On or about March 4, 1938, without objection by anyone, the court made its order granting said application. Subsequent thereto the administrator executed his note and a crop mortgage for the $1,000 in favor of the Bank of America. In the same month the water supply began to fail, the pump collapsed and the well ceased to produce.

The account was filed April 15, 1939. Upon hearing the objections to the account the court made a finding that the pump and well were both in need of repair; that it was impossible to obtain sufficient water to irrigate the land; that it became necessary to install a new pump and to drill a new well in order to obtain sufficient water supply for the farm.

In view of the failure of the well and pump, the administrator on June 30, 1938, petitioned the court for authority to borrow $2,000 for the purpose of purchasing a new pump and of drilling a new well, which petition contained a statement of facts showing the necessity for the money, the aridity of the land and the futility of attempting to sell the land without a water supply. Notice of said petition was served upon the parties interested, including appellants, and the order was entered. The bank refused to loan the $2,000 and efforts to sell the farm failed. Thereupon the administrator, conceiving that the authority to borrow money for the pur-

pose was authority to make the improvements, acted accordingly. The well was redrilled and the new pump was installed at a cost of $2,780.

During his operations the administrator paid the old bills left by decedent due to the Southern California Edison Company and thereafter incurred bills for power used upon the farm in the sum of $515.84; gas and oil, $84.96; seed, $536.75 and labor $218.10, total, $2145.00, while his gross receipts from the sale of alfalfa were $1224.27, making the loss sustained by his farming operations $920.86.

The old house having been destroyed by fire in December of 1937, the administrator received the sum of $750 in insurance, out of which he paid the balance, $88.02, due upon a refrigerator, $121.52 for the clothing of Camela and $25 for the tools of one Towne, all of which were destroyed in the fire. With the balance left, supplemented with about $70, he built a new house at a cost of $584.69.

While the court made an order for a widow's allowance of $25 per month for four months, the administrator paid the widow, besides the amount paid for the loss of her clothing, the sum of $152.44, supplied her with groceries in the sum of $218.10 and allowed her the use of the home from October of 1937 until April 28, 1939, the date of the filing of the account.

Of the items objected to, three are for alfalfa seed ($290), four are for permanent improvements ($197.50), five are for payments to the widow ($91.50), three are for oil and gas ($61.50), two are for electric power ($199.58), four are for losses of personal property belonging to others ($137.53), one is for tires and battery for the automobile, seventy-one are for labor ($1245.00) and two are for wire and water ($20.75) used in baling the hay.

As to the item for seed, the administrator advised the court by his petition for authority to borrow $1,000 in February of 1938 of his purpose to plant a large acreage in alfalfa. Objectors knew of it, made no objection and the court authorized the crop mortgage to obtain money for seed, labor and the rental of equipment. The items for oil, fuel and power and for tires and battery fall in the same category for they were used to "carry on" the farming operations. If they were incurred in planting the extra thirty acres the objectors had notice that it was about to be done and the court

authorized the purchases; if they were incurred in the course of farming the twenty acres they were properly chargeable as operation expense and will be disposed of on the same basis as items of "labor".

The four items of payments for chattels destroyed in the fire were properly approved by the trial court. For an administrator to receive insurance money for movables of others lost in a fire on decedent's estate and to withhold it from those who suffered the losses would have been sheer dishonesty. In the absence of a showing of his bad faith in settling claims of this character, no good reason appears why the court should not have approved such payments.

Nothing in the objections or in the bill of exceptions demonstrates the illegality or impropriety of the payments to the widow of $91.50. Since they are in excess of the widow's allowance they may have been deemed partial payments to the widow for her services in cooking for and serving meals to the laborers employed on the farm. Such expenditures come within the same category as items for labor.

As to the four items for improvements, they were payments either for the new well and the new pump and pipes, which the court had expressly or impliedly authorized, or for the construction of the new house, which was both a necessity and a permanent improvement of the realty and was substantially paid for out of the insurance money received for the old house. The payment of these claims as well as those for losses sustained by occupants of the house were correctly approved by the court, so long as it was convinced of the good faith of the administrator. If the debts of a decedent may in good faith be paid without verified claims (Prob. Code, sec. 929; *Estate of Machado,* 186 Cal. 246 [199 Pac. 505] ; *In re Houston's Estate,* 205 Cal. 276 [270 Pac. 939, 60 A. L. R. 730]) no good reason appears why losses suffered by others by reason of a fire on decedent's lands and expenditures on account of necessary permanent improvements of the estate should not have been approved by the court.

The seventy-one items of charges for labor and the two items for wire and water appear to have been incurred as farming and harvesting expenses. This brings us to the primary contention of the objectors, namely, that "in the absence of authority conferred by will of a deceased" or by

a probate court'' an administrator has no right to make improvements not necessary to the preservation of the estate.

In support of their contention appellants invoke the doctrine announced in *Estate of Rose,* 80 Cal. 166 [22 Pac. 86], *Estate of De Rome,* 175 Cal. 399 [165 Pac. 919], and *Estate of Ward,* 127 Cal. App. 347 [15 Pac. (2d) 901]. These cases hold that where he does not first obtain an order ''to continue the operation of decedent's business'' (Prob. Code, sec. 572) the administrator assumes the peril of the management of the business of the estate and he does not subject the estate to the liabilities growing out of his conduct of the enterprise.

▮ While the cited code section does require the administrator to obtain specific authority to carry on the business of a decedent, yet, even though his labors prove to be a detriment to the estate, the better seasoned authority holds that if he acts in good faith and as a cautious and prudent man would act under similar circumstances, he will not be personally liable for the expenses incurred by his management. (*Estate of Houston,* 205 Cal. 276, 283 [270 Pac. 939, 60 A. L. R. 730]; *In re Clos,* 110 Cal. 494 [42 Pac. 971]; *In re Moore,* 96 Cal. 522, 528 [31 Pac. 584].) ▮ If the administrator in this case had undertaken to subdue an utterly untouched desert and to plant it for the first time, the rule of the *Estate of De Rome, supra,* might with propriety be applied. But such is not the case. Twenty acres of alfalfa were flourishing, while thirty acres were in a state of neglect. He undertook to replant land which had theretofore produced crops, to make repairs to the well and pump which had long been in use, and he rebuilt the house, which was indispensable to the best interests of the estate. He was obliged to keep the pump and well in repair (Prob. Code, sec. 581), and he conceived it to be his duty to re-seed and irrigate the neglected thirty acres. He was impliedly authorized to do these things when he was granted an order to borrow the $1,000, and he was virtually authorized to redrill the well and to replace the old pump by the authorization to borrow the $2,000.

As he proceeded to carry out his undertakings the objectors complacently observed the procession of events until they discovered that the price offered for the land was far below its appraised value. The estate having received full benefit of the expenditures, it were inequitable to deny re-

imbursement to the administrator. (*Estate of Houston, supra; In re Clos, supra.*) To procure an order to proceed before undertaking to make the repairs and to do the farming was not indispensable. If his acts and the expenditures are approved "there is no rule of law which will deprive the court of power to reimburse him". (*In re Moore*, 88 Cal. 1 [25 Pac. 915].) ■ If the court has the power to authorize an administrator to perform an act, it has the power to ratify the act when done without a previous order. ■ The probate court is vested with power to supervise the conduct of administrators. If they neglect to procure authorization to perform acts, that court is the tribunal to approve or disapprove. ■ The fact that economic losses may result to the beneficiaries is not the sole criterion by which to measure the quality of the administrator's act. ■ In the absence of a showing of bad faith upon his part or of an abuse of discretion by the trial court in approving the account, it would be inappropriate for the appellate court to interfere with the action of the trial judge. For these reasons the court's action in overruling the objections must be sustained.

The complaint that no proper inventory has been filed and that certain items of personal property have never been accounted for will come before the superior court when the new inventory has been filed as ordered at the hearing of the account.

The order is affirmed.

Wood, J., and McComb, J., concurred.