DUNN, APPELLEE, *v*. ROSTOCK ET AL., APPELLANTS.

(No. 6395—Decided May 15, 1944.)

*Mr. Cedric Vogel,* for appellee.
*Mr. Clarence H. Hallman,* for appellants.

MATTHEWS, J.   This is an appeal from a judgment on the verdict of a jury in favor of the plaintiff in a cause of action on a contract for labor upon a residence, at the rate of $1.25 per hour.

One of the defenses was that the promise sued upon was to answer for the debt, default, or miscarriage of another, which to be enforceable was required, under Section 8621, General Code, to be in writing, and that, as there was a failure to prove any such written promise, there was a failure of proof of the kind required by the statute.

The trial court concluded that the statute of frauds was inapplicable and instructed the jury that: "A contract of this kind, if you find there was a valid con-

tract, according to the testimony of the plaintiff, such as he has testified to, then such contract need not be in writing, and it is for you to say what if any contract was made between the plaintiff and the defendants.''

There is a conflict in the evidence as to just what was said between the parties in the conversation relied upon to prove the contract, and the issue raised by this appeal is whether any ·reasonable construction of the testimony would bring the promise within the statute as a collateral promise to answer for the default of another.

The defendant Grace Rostock owned a lot of land in the city of Cincinnati. She entered into a contract with one Jones to erect a residence thereon. Jones engaged the plaintiff to do, or furnish carpenters to do, some or all of the carpenter work at $1.25 per hour. While the work was in progress and at a time when $159 was due and unpaid, the plaintiff reached the conclusion that Jones could not build the house for the contract price and became apprehensive about being paid for the carpenter work. He went to the house and told his employees to quit work, but before they had left the premises the defendant Otto Rostock, who was the husband of Grace Rostock, appeared and thereupon, according to the plaintiff, this conversation took place with him:

''I said 'Mr. Rostock, I came down to pull these men off.' He said 'What is the matter?' I said 'I am not getting paid, and from what I hear this job is not going to pay .out. Somebody is going to take a loss. It isn't going to be me.' He said, 'What makes you think it isn't going to pay out?' I said 'From what I heard about the contract price. I have been in this business about thirty years. I know it can't possibly pay out.' He acknowledge to me then they wouldn't pay out, one thousand, fifteen hundred dollars. He said, 'You leave your men on, go ahead and finish. I will guarantee

that you will get every cent that is coming to you.'
Well, I thought enough of Mr. Rostock,—took his word.
I said, 'All right, I will go ahead and work.'"

Otto Rostock's version was somewhat different.
He testified that the plaintiff told him he intended
to " 'take his men away.' I said, 'Your men away?
What for?' 'Well,' he says, he wants a guarantee
who is going to pay for this; he hears something the
job isn't going to pay out. I said, 'I don't know any-
thing about that,' and he said that he was to have an
understanding who is going to pay for the rest of
the work, I said 'I wouldn't pull the men off. I will
promise you that I will pay you from this time. on.'"

Two of the carpenters testified to hearing a part or
all of this conversation. One testified: "Well, Mr.
Dunn came down to take us off the job because Mr.
Jones wasn't paying up, so Mr. Rostock says 'Don't
do that,' he said 'I will see that you get all your
money.' Se we stayed on then."

The other carpenter testified Mr. Rostock said:
"Leave them here, let them finish it up for me, I will
see that they get every cent coming to them."

Jones, the principal contractor, never abandoned the
work and after this conversation with Mr. Rostock the
plaintiff finished the carpenter work under the super-
vision of Jones, apparently just as he had done before
the conversation, and as though no such conversa-
tion had taken place. The house was completed and
there remained due the plaintiff and unpaid, the sum
of $253.16 for work done after, in addition to $159 for
work done before, the conversation.

At the close of the charge, on motion, the court dis-
missed Grace Rostock from the action.

The jury returned a verdict against Otto Rostock
for the work done after the conversation, and judg-
ment was entered thereon.

There was evidence that the plaintiff did not pro-ceed diligently, but that is not mentioned on this appeal.

Now, it is clear that a contract was made between the plaintiff and Otto Rostock. Was it an absolute independent promise by Otto Rostock, or was it a collateral special promise to answer for the default of Jones? Only in the event that the uncontradicted evidence proved an independent promise was the court justified in charging that it need not be in writing. If there was evidence, even though controverted, that it was a promise collateral to that of Jones, it became an issue of fact to be decided by the jury.

In *Birchell* v. *Neaster*, 36 Ohio St., 331, the facts were very similar to those of the case at bar. The question was raised in a different manner, however. The plaintiff had filed a mechanic's lien on the theory that he had an independent contract with the owner based on his conversation with her, which was almost verbatim the conversation between the plaintiff and Otto Rostock and under almost identical circumstances. The trial court found that the statute of frauds did not apply and entered a decree for the sale of the property to satisfy the lien. The Supreme Court reversed the judgment and used language in its opinion that is susceptible to the construction that the court considered the contract so clearly within the statute that no issue of fact was presented. However, the court did not enter final judgment for the defendant, but reversed and remanded to the Common Pleas Court. The syllabus was limited to statements of conclusions of law, based on an oral promise, the terms of which were not in dispute.

In *Crawford* v. *Edison*, 45 Ohio St., 239, 13 N. E., 80, the words used by the parties were about the same as those in the case at bar and in *Birchell* v. *Neaster, supra,* but there the resemblance ends. They were ut-

tered under entirely different circumstances. The principal contractor had abandoned the work and left the county, when the plaintiff had completed about two-thirds of his subcontract, without having paid him anything and without having made any provision for paying for work done or to be done by him. It was in that situation that the conversation between the plaintiff and defendant took place.

The trial court, in the *Crawford case,* did not decide as a matter of law that the contract was not within the statute of frauds, but left the issue of the intent of the parties to the jury under this charge:

" 'If the jury find that the defendants entered into an agreement with the plaintiff, that if he, the plaintiff, would finish the roof, they, the defendants, would pay him the price that Smith was to pay, and you find their agreement was absolute, and not that they, the defendants, would stand as security for Smith, and pay if Smith did not, then your verdict should be the amount claimed in plaintiff's petition, with interest added from the time claimed in the petition, to the 26th day of January, 1885. For I say to you, gentlemen, that if the plaintiff and defendants were of the opinion that Smith had abandoned the contract that he had made with the plaintiff, and the plaintiff was induced to complete the roof, by the promise and agreement that defendants would unconditionally pay him the sum of $155, such agreement would be supported by a sufficient consideration. But on the contrary, if you find the promise or agreement alleged to have been made between the plaintiff and defendants, was to pay or stand for the debt, default or miscarriage of Smith; that is, to pay plaintiff if Smith failed to, in respect to his, Smith's agreement with plaintiff, to pay plaintiff $155 for putting on the roof, then plaintiff cannot recover in this action, as it is not claimed that such agreement was in

any respect in writing, and your verdict should be for the defendants.' "

The jury found for the plaintiff and judgment was rendered on the verdict. This judgment was affirmed by the Supreme Court. At page 247 of the opinion, the court set forth in great detail the circumstances under which the parties had conversed and it was those circumstances upon which the court relied to give the meaning of an intent to make an absolute and independent promise not within the statute of frauds as found by the jury. The court at pages 248 and 249 of the opinion, took notice of *Birchell* v. *Neaster, supra,* saying: "But in all that classifies that case among collateral and conditional promises, and distinguishes it from original and unconditional ones, it bears no analogy to the case under discussion." It is thus seen that the court recognized that the two cases were in different categories and expressly so placed them.

The test in every case of this kind is whether the parties intended to make an absolute and independent contract or a conditional and collateral one. Ordinarily, the parties have not so stated in express terms and the trier of the facts is driven to the drawing of inferences from facts and circumstances to determine the intent. This is pointed out in 19 Ohio Jurisprudence, 573, Section 31, where, after a comment on various indicia of intent, it is said at 575:

"The reader must keep in mind that the question is one of construction of contract, and like other questions of this kind, its solution is not one that can be had according to any rule of thumb."

So in the case of *Kampman* v. *Pittsburgh Contracting & Engineering Co.,* 316 Pa., 502, 175 A., 396, 99 A. L. R., 76, where the language was that the defendant would "stand good" and "see" that plaintiff was paid, the court held that the determination of the intent under the circumstances was an issue of fact for

the jury and reversed a judgment entered by the trial court, notwithstanding the verdict. Quoting with approval from its opinion in the prior case of *Corcoran* v. *Huey,* 231 Pa., 441, 80 A., 881, the court said at page 505 of the opinion:

" 'If the words "we will see to it that you are paid" have a fixed legal meaning which so limits their force that only a secondary or collateral liability can be derived therefrom, then, inasmuch as the evidence which was asked to be stricken out, if believed, establishes a primary obligation, the motion to strike out should have prevailed; for the variance between the *allegata* and *probata* would in such case be obvious. But this cannot be affirmed. These words have no such certain, fixed meaning that the court could say as a matter of law that they necessarily import the one kind of obligation rather than the other. Much depends on the connection in which they occur, and the circumstances attending their use. Cases are not wanting where the words "will see you paid" have been held to imply a collateral undertaking to pay if the original promisor did not, and counsel for appellants have recited some in support of their contention; but neither are cases wanting where recovery has been allowed as on an original undertaking where the same words, or words equivalent, have been used.' "

In the annotation to the *Kampman case* in 99 A. L. R., 79, an attempt is made to classify the many cases arising out of dealings of owners with subcontractors and materialmen in which the latter have sought to enforce an oral promise of the former. Many indicia are used as a basis of classification, but it is easily detected that what is under consideration are not rules of law, but factual data from which inferences may or may not be drawn by the trier of the issues of fact.

In the case at bar, the conflicting evidence as to the

exact words and the facts and circumstances hereinbefore set forth, furnished ample basis for reasonable difference as to the intent of the parties. There was presented, therefore, an issue of fact for decision by the trier of the facts, which in this case was the jury. The function of the court was to formulate this issue and submit it to the jury for decision, under proper instructions, as was done in the case of *Crawford* v. *Edison, supra*.

We find no other error in the record.

For these reasons, the judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

Ross, P. J., and HILDEBRANT, J., concur.