## Carney, Appellant, *v.* Girsh-Moss, Inc.

Argued October 5, 1956. Before RHODES, P.J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (HIRT, J., absent).

reargument refused January 23, 1957.

*C. Norwood Wherry*, with him *William Taylor, Jr.*, and *Holl, Taylor & Holl*, for appellant.

*Robert W. Beatty*, with him *Butler, Beatty, Greer & Johnson*, for appellee.

OPINION BY CARR, J., December 28, 1956:

The appellant, Leo Carney, a sub-contractor, entered into an oral contract with Raylis and Craven, Inc. under the terms of which he was to supply and lay the sod for new homes in a housing development owned by Girsh-Moss, Inc., appellee. After the work was completed and the contractor had failed to pay him in full, he brought suit against Girsh-Moss, Inc. contending that the defendant had made an enforceable promise of payment sufficient to take the case out of the statute of frauds. He now appeals from the refusal of the court below to take off a nonsuit entered at trial.

About March 31, 1955 the work of laying the sod began and on April 12 the appellant billed Raylis and Craven, Inc. for $1,295.00. On April 22, 1955, $1,-

000.00 was paid on account. In May, 1955, appellant had a discussion with Cotler, general manager and superintendent of Girsh-Moss, Inc., and Starrett, general superintendent for Raylis and Craven, Inc. Carney testified that he discussed payment of his bill with the two of them and that Cotler said, "Don't worry about the money, you will get the money," and that Starrett said he would get his money because Girsh-Moss, Inc. was holding money back to make sure the sub-contractors would be paid. Carney further testified that on Friday, May 27, Cotler called him on the telephone to tell him that the houses were ready to be finished and wanted Carney to finish them, whereupon Carney said that he did not think he was going to do them because he had not received any money for the second part of the work. According to Carney, Cotler told him to go ahead and do the job and when he had finished, to send a duplicate bill to Girsh-Moss, Inc. and they would see that he got his money. On May 31, the day after Memorial Day and the first working day after this telephone conversation, Carney resumed work at Irvington Park and continued until the second or third of June when the job was completed. On June 3, 1955 Carney sent a bill for the balance due to Raylis and Craven, Inc. and a duplicate was sent to Girsh-Moss, Inc.

Frank Starrett, general superintendent for Raylis and Craven, Inc., having been called as a witness for the appellant, also gave evidence concerning the conversation on March 31, 1955. He testified, "Well, there was the question of payment and Leo said he wanted to be sure he got his money. Mr. Cotler said to me 'Do you think it would be all right if we paid Mr. Carney direct.' I said, 'I should think so.' . . . And then he said, 'All right, we will pay you direct.' "

Another witness, Thomas L. Meyer, an employee of Carney, stated that according to his best recollection the following conversation took place between Carney and Cotler sometime between May 22 and June 3, 1955, "Paul said, 'When can I get this sod in' and he said 'I got to get these houses passed.' And Leo said, 'There isn't much, only a few spots that you got to grade, when you went down too far, a truckload or two, but I want to know about the money for the work that has been done already, before I put any more sod in.' Paul said 'You send a duplicate bill to us and I will see that you get your money, don't worry about it.' "

There are numerous reported cases both in this Commonwealth and elsewhere considering the specific question raised here as to whether or not, under the circumstances, the plaintiff has shown by clear and competent evidence that there was a new contract between himself and the defendant. See Note, 99 A.L.R. 79. All of these cases appear to have been decided after careful study of the entire record and are not based upon any particular words used by the parties. In *Corcoran v. Huey*, 231 Pa. 441, the court said, "These words [we will see to it that you are paid], have no such certain, fixed meaning that the court could say as a matter of law that they necessarily import the one kind of obligation rather than the other. Much depends on the connection in which they occur, and the circumstances attending their use. Cases are not wanting where the words 'will see you paid' have been held to imply a collateral undertaking to pay if the original promisor did not, and counsel for appellant have cited some in support of their contention; but neither are cases wanting where recovery has been allowed as on an original undertaking where the same words, or words equivalent, have been used."

A careful reading of the record leads us to the conclusion that this was not an unequivocal promise to pay. The language used together with the actions of the parties are as consistent with a guaranty or agreement to be responsible for the debt of another which would be within the statute of frauds as with a new contract between the parties. Although there were several demands for payment there is no definite testimony that the appellant refused to continue the work until he was paid. It appears that near the end of May no more sod could be put in until certain grading operations had been completed and that the appellee or his agent made no direct promise to pay or that the appellant relied upon any such promise. It should be noted that all bills were sent to Raylis and Craven, Inc., only a duplicate being sent to Girsh-Moss, Inc. There is nothing in the record to indicate that Raylis and Craven, Inc. were insolvent or bankrupt at the time the work was in progress though both parties state in their briefs that Raylis and Craven, Inc. was adjudicated a bankrupt on July 12, 1955, more than a month after the work was completed.

We are of the opinion that the facts in evidence are insufficient to warrant a jury in finding an unequivocal promise by the appellee to pay the appellant.

Order affirmed.