379 P.2d 123

Betty G. McCLAVE, both individually and as Executrix of the Estate of Jesse Garrett Simmons, deceased, Appellant,

v.

ELECTRIC SUPPLY, INC., a corporation, Appellee.

No. 6918.

Supreme Court of Arizona.

In Division.

Feb. 27, 1963.

Rehearing Denied April 2, 1963.

Kenneth Samuel Scoville, Phoenix, for appellant.

Cunningham, Carson & Messinger, Phoenix, for appellee.

STRUCKMEYER, Justice.

Judgments were obtained against Betty G. McClave, appellant, as executrix of the estate of Jesse Garrett Simmons, deceased, on the admission that the estate was indebted for the goods purchased on open account and after trial against her individually on verdict of the jury. This appeal is from the judgment against her individually.

This case is similar to Graybar Electric Company v. McClave, 91 Ariz. 223, 371 P.2d 350, with one exception hereafter noted and what we said there is in part applicable here. In Graybar we said it is a breach of trust for the personal representative of a deceased to carry on a business in behalf of the estate where not authorized by will or the probate court for the reason that it is the personal representative's duty to wind up the affairs of decedent for the benefit of the heirs and creditors. We also said that the personal representative may be held individually liable for debts incurred in the continued operation of the decedent's business because the continuation of decedent's business is a personal act which will not be attributed to the estate. However, we stated that there is no personal liability for the carrying out of contracts existing at the time of decedent's death for these must be honored by the personal representative. This is true whether the existing contracts are profitable or unprofitable to the estate for the reason that if an estate is insolvent, or nearly so, no one could be prevailed upon to accept the responsibility of winding up the affairs of deceased persons.

The uncontradicted facts here establish that decedent was at the time of his death engaged in the electrical contracting business under the name of the Simmons Electric Company. At the time appellant qualified as special administratrix, she requested and received from the court pursuant to A. R.S. § 14–542 authority to continue the decedent's business, but she did not later request nor receive permission from the court to continue the business later when she was appointed and qualified as executrix under the will. No distinction has been made in the evidence in the case as to goods sold for use in contracts existing prior to Simmons' death and those entered into thereafter in the estate's behalf.

Some twenty-two months after appellant's appointment as executrix and at a time when it appeared that the affairs of the estate could no longer be continued on a financially sound basis, she petitioned the probate court for directions to wind up the estate and for ratification of her acts as executrix in continuing decedent's business. Certain creditors of the estate appeared, but not appellee, some objecting to the liquidation of the business. The court, however, on the 7th day of June, 1957, ordered appellant to terminate and liquidate the business and made certain determinations including these:

"(2) That the acts of the said Executrix in carrying on said business of said estate was in the best interests of said estate and all parties interested therein and was necessary to wind up the same and to convert same into assets to carry out existing contracts and in the furtherance of the duties of said Executrix in getting the estate in a position to close same.

"(3) That the obligations incurred by said Executrix in the couse (sic) of operation of said business as aforesaid are obligations of said estate and are not the personal obligations of the Executrix."

■ Appellee argues that the determinations of the probate court are not binding on it, since it was not notified nor did it appear at the hearing, but this is a point we do not think necessary to decide. While the general rule is that a personal representative may be charged with all losses incurred and profits made if he engages in business with assets of the estate, the Arizona Statute, A.R.S. § 14–542 provides an exception in that an executor, administrator or special administrator, if he deems it for the best interest of the estate and those interested therein, may petition the court for authorization to continue operation of the business of a decedent.

The statute comes from California, as does most of our probate code, In re Sullivan's Estate, 51 Ariz. 483, 78 P.2d 132.

The judicial interpretation of the statute in California is summarized in 20 Cal.Jur. 2d 462, Executors and Administrators, § 282:

"* * * since the court has power to authorize the representative to conduct the decedent's business, it also has power to ratify such an action on his part taken without a previous order of court. Especially is this true where the carrying on of the business is necessary for the preservation of the estate."

The principle has been applied in a number of cases, see In re Maddalena's Estate, 42 Cal.App.2d 12, 108 P.2d 17 and In re Scherer's Estate, 58 Cal.App.2d 133, 136 P.2d 103.

■ Appellee, however, argues that in those cases the rights of creditors were not involved as distinguished from the rights of devisees and legatees under the will. It is true that the acts of personal representatives were questioned upon requests for the allowance of fees for extraordinary services. Nevertheless, it is firmly established that the probate court under such a statute as A.R.S. § 14–542 has the fundamental power to ratify the acts of a personal representative if the business is carried on without its initial authority.

"It must be conceded that the probate court was clothed with power to authorize the executor to conduct testator's business. Therefore the court possessed the power to ratify such action on the part of the executor, done without a previous court order. [In re] Estate of Maddalena, 42 Cal.App.2d 12, 19, 108 P.2d 17. Especially is this true where the carrying on of the business was a necessary means to preserve the estate." In re Reinhertz' Estate, 82 Cal.App.2d 156, 185 P.2d 858, 186 P.2d 755.

■ The same reasons which would influence a probate court to authorize a personal representative to carry on a decedent's business would justify the ratification of his acts in carrying on the business without a previous authorization. Appellee primarily attacks the wisdom of permitting the trial court to ratify the previous unauthorized acts in carrying on a business. We think appellant's argument unnecessarily restricts the sound discretion of the probate court. Presumably, a court feeling that the continuation of the business was not justified, would refuse to ratify the acts of the personal representative. The principle here applied is apparent in the language of the Supreme Judicial Court of Massachusetts in Gladstone v. Bank of Commerce & Trust Co., 281 Mass. 177, 183 N.E. 262:

"The appellants further contend that the accountant did wrong in continuing the business until the sale to Cantor on June 14, 1926, and should be charged

with the loss incurred during his operation of the business. It is true that the books showed a loss of $7,387.04 from January 1, 1926, to June 14, 1926, although there was testimony from the accountant that there was no such loss in fact. But the judge was justified in finding that the loss in value of the assets that would have resulted from closing the business, so that it could not have been sold as a going concern, would have exceeded the loss incurred in its operation."

■ The point with which we are here concerned is that the probate court was authorized and did make the debts incurred by the executrix in carrying on the decedent's business charges against the assets of the Simmons estate. The effect of ratification is, of course, the equivalent to previous authorization since it relates back to the time when the act ratified was done. McKenzie v. Mukilteo Water District, 4 Wash.2d 103, 102 P.2d 251; cf. Hermance v. Public School Dist. No. 2, 20 Ariz. 314, 180 P. 442. The estate thereby became indebted to the creditors who transacted business with appellant as executrix of the estate of Jesse Garrett Simmons, deceased, and the executrix was relieved of personal liability. We here note that there can be no other legal justification for a suit against the executrix as the personal representative of the estate and no other basis can justify

the taking of a judgment for goods sold and delivered on contracts entered into and executed by the estate after Simmons' death.

As stated, this case is nearly identical to Graybar Electric Company v. McClave, supra. Over the period of more than a year and one-half merchandise was sold to the Simmons Electric Company on open account. After Simmons' death payments by check drawn against the funds of the estate were accepted totaling in excess of $56,000. In Graybar we held that appellee was estopped from asserting a claim against the executrix personally and the principle is also equally applicable here. But appellee further urged in the court below that appellant undertook to pay for the goods and merchandise delivered by a promise to be personally liable therefor and upon this theory of the case the judgment was entered against appellant individually.

As to this appellant assigns as error the failure of the court below to direct a verdict in her favor for the reason that the evidence as a matter of law was not sufficient to establish her individual liability. For the same reason she assigns as error the giving of appellee's requested instruction #2 reading:

"You are instructed, that if you find, from a preponderance of the evidence that Betty McClave individually promised Electric Supply Inc., plaintiff in this action, to pay for merchandise and

supplies that it delivered than you must return a verdict in favor of the plaintiff, and against the defendant in her individual capacity."

It is to be noted that the instruction does not distinguish between appellant's liability for a collateral promise guaranteeing the debt of another and a direct promise as as original contracting party. Concededly the promise was oral and therefore, if the former, it is within the Statute of Frauds, A.R.S. § 44–101.

 Appellee's case rests wholly upon the testimony of Edward L. Hinson, its credit manager. He testified that a month or two after Simmons' death appellant told him that some of the suppliers for the Simmons Electric had closed down their accounts; that materials were needed to execute the jobs in progress and that a place was needed where business could be done on an open account basis. Hinson testified that appellant specifically said:

"We need an open account to execute our jobs and I will see that you get your money if you will continue on an open basis."

While this testimony is sufficient to support a jury finding that appellant agreed to pay personally for the merchandise, it does not answer the question of whether her promise was intended as an assumption of the estate's debt as a principal obligor or simply as a guarantor to pay if the estate did not pay.

 Such language as "I will see that you get your money" is fairly commonplace. It and similar phrases are manifestly equivocal and require other evidence from which the intention of the parties can be determined. Corcoran v. Huey, 231 Pa. 441, 80 A. 881; Kampman v. Pittsburgh Contracting & Engineering Co., 316 Pa. 502, 175 A. 396, 99 A.L.R. 76; Dunn v. Rostock, 74 Ohio App. 311, 59 N.E.2d 48.

"Counsel for Davis place stress on the form of expression attributed by Patrick to Davis, to-wit: 'I will be personally responsible; I will see you paid;' and contends that the import of such language is that of a collateral promise. There is force in this contention, as it implies that some one else was also bound, but the real character of a promise does not depend altogether upon the form of expression, but largely on the situation of the parties; and the question always is, what the parties mutually understood by the language,— whether they understood it to be a collateral or a direct promise, * * *" Davis v. Patrick, 141 U.S. 479, 12 S.Ct. 58, 35 L.Ed. 826.

There is no absolute criteria by which intention can be determined. Each case is dependent upon its own particular facts and

circumstances. See collections of cases in annotations, 99 A.L.R. 79 and 20 A.L.R.2d 246.

The context in which the words were used does not give any assistance as to the meaning intended. These questions were asked:

"Q. Did Mrs. McClave say anything else at that time, to you?

"A. Not to my knowledge."

And on cross-examination:

"Q. * * * My point is she didn't tell you that she, personally, would see that you got your money?

"A. That was the understanding, yes.

"Q. No, We are talking about the conversation. * * *

"A. That is exactly the inference of the conversation."

The witness neither stated nor implied that he understood appellant intended a direct promise to assume the estate's debt as principal obligor. cf. Mazzotta v. Gora, 19 Conn.Supp. 96, 110 A.2d 295. Since there was no discussion as to the specific nature of appellant's promise, the implication is to the contrary. Indeed under such circumstances it has been held that the collateral character of the promise is conclusive. Mazzotta v. Gora, supra; King v. Schmall, 156 Neb. 635, 57 N.W.2d 287; Throckmorton v. Robinson, Tex.Civ. App., 83 S.W.2d 696.

If, however, the subsequent conduct of the parties is examined no facts can be found from which can be derived an intention to charge appellant as an original promisor. Business was conducted as it had been prior to Simmons' death. The merchandise furnished was billed to the Simmons Electric and charged on appellee's books to the Simmons Electric. Payment was by check drawn against the Jesse Garrett Simmons Estate and in several instances when the account was in arrears communications were directed to the Simmons Electric. cf. Clayton Coal Co. v. King, 108 Colo. 63, 113 P.2d 672; Carney v. Girsh-Moss, Inc., 183 Pa.Super. 99, 128 A.2d 171. All the facts and circumstances negative appellee's position.

Appellee stresses its evidence that appellant was in a position to receive substantial benefits from the making of a direct promise to pay and this is true. The estate was indebted to her for the sum of $12,000 lent to Simmons prior to his death. She as executrix was allowing herself $100 a week, the same amount she was paid by Simmons for managing his business for some time prior to his death. In addition a number of relatives were on the payroll in varying capacities. But we do not think this throws any light upon the parties' intention at the time the promise was made. While the pecuniary benefits which appellant might derive from directly assuming the indebtedness of the

estate might have been great, the same benefits could equally have been the inducement for a collateral promise. Circumstances can hardly be conceived which would induce a person to promise to answer for the debt or default of another which would not at the same time benefit the promisor. Appellee's argument does not, therefore, shed any significant light on the question as to what the parties understood and agreed to at the time the promise was made.

We hold that under the language used and the surrounding circumstances appellee failed to prove an original undertaking. The burden of proof, of course, was upon appellee as the burden always is upon a plaintiff to prove material allegations necessary to support a cause of action. Where the facts are in dispute their determination is for the jury. Where as here, the only dispute was whether the promise was made at all—which we assume was resolved by the jury's verdict in appellee's favor—and no conflicting inferences stem from the undisputed facts, its construction as collateral is one of law to be resolved by the court. Seiffert Co. v. Wright, 108 Wash. 616, 185 P. 577.

The judgment is reversed with directions to the court below to enter judgment in favor of the appellant in her individual capacity.

UDALL, V. C. J., and J. SMITH GIBBONS, Superior Court Judge, concur.