Rex **SCHEPP** and Mary Schepp, his wife, Appellants,

v.

Ellen **LANGMADE**, individually and as Administratrix of the Estate of Stephen W. Langmade, Deceased, et al., Appellees.

No. 22638.

United States Court of Appeals
Ninth Circuit.

Sept. 15, 1969.

Charles C. Stidham (argued), of Welliever, Stidham, Smith & Holt, Phoenix, Ariz., for appellants.

James E. Flynn (argued), Allan K. Perry, Phoenix, Ariz., for appellees.

Before CHAMBERS and HAMLEY, Circuit Judges, and BEEKS, District Judge.

BEEKS, District Judge.

This is an appeal from a judgment entered by the district court sitting without a jury, and from the denial of a motion to vacate that judgment and grant a new trial. We have jurisdiction under 28 U.S.C. § 1291.

The action was commenced below by the wife of Stephen Langmade, a deceased attorney, individually and as administratrix of her husband's estate, and by Langmade's surviving law partner. Appellants Rex Schepp and his wife were the controlling shareholders of Evansville Television, and he was the president of the company. Langmade performed services for Evansville worth $37,000.00. He agreed to accept 1000 shares of both Class A and Class B stock for his services, which were worth $20.00 per share, and to pay Evansville $3,000.00. The shares were issued to a John Spencer and Rex Schepp for reasons not here material, and were endorsed by them and delivered to Langmade. Thereafter, in June of 1956, Rex Schepp asked Langmade to return the stock certificates to him so they could be reissued in Langmade's name. Langmade did so. In February of 1957 he demanded issuance of the stock, but was refused. He thereafter commenced an action against Evansville for breach of contract, conversion of the stock, and specific performance. Rex Schepp was not named as a defendant in that action. The action was compromised, and Langmade agreed to take 1400 shares of Evansville stock. Both Evansville and Langmade specifically reserved any rights each might have against Schepp. Appellees herein, plaintiffs below, assert that Rex Schepp had promised to convey the balance of the 600 shares to Langmade, and that this promise induced Langmade to enter into the aforementioned compromise agreement. The trial court so found, and this appeal followed. Three specifications of error are presented.

Appellants' principal contention is that the court erred in denying their motion to amend the pleadings after the trial to more specifically allege the affirmative defense of the statute of frauds. The essence of this contention is that the trial court disregarded this defense. They assert that the alleged promise to transfer 600 shares of stock was a promise to answer for the debt of another; that such a promise must be in writing to satisfy the statute of frauds; and since it admittedly was not, that certain findings of the trial court relating to the agreement to transfer the stock may not be sustained.

The applicable section of the Arizona statute of frauds, A.R.S. § 44–101(2), states that

No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, * * *.

* * * * * *

2. To charge a person upon a promise to answer for the debt, default or miscarriage of another.

Appellants urge that this section of the statute applies to the promise reflected in the court's finding that "the defendant, Rex Schepp, advised Langmade's attorney that Schepps [sic] would make up the difference between the 400 shares of Class A stock offered by the corporation and the 1000 shares of Class A stock which Langmade was demanding, and would deliver to Langmade 600 shares of Class A stock". Assuming that the statute of frauds was sufficiently pleaded as a defense to this

promise,[1] the statute clearly does not apply to a promise to fulfill one's personal obligation.[2] That the trial court considered the statute of frauds inapplicable for this reason is reflected in his finding that "the defendants were obligated to have the stock issued by the corporation to Langmade or return the certificates if they were not reissued." Appellants' contention that these findings are clearly erroneous because there was no writing, as they assert is required by the statute of frauds if the promise is to be enforceable, assumes that the obligation was a corporate obligation, not a personal one, and that the promise was therefore to answer for the debt of another. The trial court, however, found that the obligation was Rex Schepp's personal obligation.[3] Appellants do not assert that this finding or the other findings challenged as invalid under the statute of frauds were clearly erroneous because there was no substantial evidence to support them. Since they have not done so, the findings will be sustained.

■■ Appellant's second and third specifications of error require only brief comment. As to the second, there was substantial evidence to support the findings that the December 30, 1955, agreement was in effect, was breached, and that the value of the stock at the time of the breach was $30.00 per share. Since there was substantial evidence to support these findings, they may not be disturbed on appeal.[4]

Finally, appellants assert reversible error in the trial court's denial of their motion to vacate judgment and for a new trial under Rule 60 of the Federal Rules of Civil Procedure, which was filed some seven months after judgment was entered. Their motion was predicated upon subsections (b) (2) and (6) of Rule 60, which respectively authorize the court to grant a motion to vacate judgment upon the grounds of newly discovered evidence or for any other reason. Specifically, appellants assert that at the pre-trial conference their counsel waived trial by jury, contrary to their wishes. At the trial, which occurred approximately one week later, a minute order was entered to this effect. Rule 39 requires that a waiver of a jury trial previously demanded be in writing or by oral stipulation in open court. Appellants do not urge that their attorney's action was not binding upon them if the proper procedure had been followed, but instead assert that this procedure does not comply with Rule 39. This asserted procedural irregularity is claimed to be the "newly discovered evidence" contemplated by Rule 60(b) (2).

■■■ It is axiomatic that the granting or denial of a motion under Rule 60 is within the sound discretion of the trial court, and that such a ruling will not be set aside unless there is an abuse of discretion.[5] We do not find the trial court's denial of appellants' motion for a new trial to have been an abuse of discretion. The asserted procedural irregu-

---

1. If it had not been, the denial of the motion to amend was clearly within the court's discretion. Absent an abuse of discretion, which appellants have not demonstrated, there is no reversible error.

2. See McClave v. Electric Supply, Inc., 93 Ariz. 135, 379 P.2d 123 (1963).

3. See Fluor Corp. v. United States ex rel. Mosher Steel Co., 405 F.2d 823 (9th Cir. 1969). In that case cross-appellee contended that the district court erred in disposing of its counterclaim without entering findings of fact and conclusions of law. Its counterclaim was based on an alleged principal-surety relationship with cross-appellant. This court there

stated that "the purpose of Rule 52(a) is satisfied if the trial court's findings are sufficient to afford a clear understanding of the ground upon which the court based its judgment. * * * It is apparent to us that the trial court rejected Union's counterclaim because it found Union's relationship to the debt to be that of a direct obligor, not a surety." *Id.* at 828.

4. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (May 19, 1969).

5. *E. g.*, Bennett v. Federal Deposit Ins. Corp., 396 F.2d 909 (9th Cir. 1968); Gorsuch v. Provident Sec. Life Ins. Co., 392 F.2d 200 (9th Cir. 1968).

larity is not "newly discovered evidence *which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)*." Moreover, appellant Rex Schepp's suggestion that he did not realize that the trial was occurring until it was over borders on the incredible, particularly since he testified therein and because the clerk announced that the case was "on for trial" when it commenced. Appellants' contention that they did not consent to the waiver would be more credible if they had not waited for some seven months thereafter to complain thereof.

The judgment is therefore affirmed.